RICHARD RICHESON *et al.*

*v.*

MONROE C. CRAWFORD *et al.*

1. STATUTE—*saving rights on repeal.* The act of 1872 repealing section five of the Revenue act of 1853, which made a collector's bond, when approved and recorded, a lien on all the real estate of the collector, provides that the repeal of the act of 1853 shall not impair any existing rights.

2. LIEN—*of collector's bond.* Under the act of 1853, now re-enacted as section 134 of the Revenue law of 1872, the approval and recording of a collector's bond created a lien upon the real estate of the collector in favor of the State and county for moneys collected by him, which can not be defeated by any sale by him to another.

3. SAME—*when enforcible only in equity.* A court of equity is the appropriate and indeed the only forum in which to enforce the lien given by the statute upon the real estate of a collector of taxes, as against subsequent purchasers from him acquiring the legal title before judgment against him.

4. SUBROGATION—*of surety to lien on principal's land.* Where the sureties of a county collector are compelled to pay money to the State or county for

the default of the collector after he has transferred his real estate after the statutory lien has attached thereto, they will in equity be entitled to be subrogated to the lien in favor of the State, and may enforce the same against the grantee of the collector by a bill in chancery to reimburse themselves for the amount paid by them.

5. Same—*security taken by payee inures to benefit of surety.* Where a mortgage or further security is taken from the principal debtor, the property embraced in it is to be held not only for the benefit of the creditor, but also for the indemnity of the surety, and it is the right of the surety, when he pays the debt of the principal, to be subrogated to whatever security the creditor had.

Appeal from the Circuit Court of Perry county; the Hon. Amos Watts, Judge, presiding.

Mr. Thomas J. Layman, and Messrs. Hammack & Davis, for the appellants:

We insist that the statutory lien of a collector's bond is not only for the security of the State and county, but also for the indemnity of the securities on the bond, and that in case the securities are compelled to pay for the principal they are entitled to be put in the place of the county and State and to succeed to all the means and every remedy which they possessed, to enforce payment from the collector. *Hay* v. *Ward et al.* 4 Johns. Ch. 122; 1 Coms. 599; *Watts et al.* v. *Kinney et ux.* 3 Leigh, 272–294; *Powels, Exr.* v. *White,* 11 id. 309; *Wheatley's Heirs* v. *Calbourn,* 12 id. 262, 274; *Lidderdale* v. *Robinson,* 2 Brock. 160; 12 Wheat. 594; *Schultz* v. *Carter et al.* 1 Spears' Eq. 534; *Cheeseborough* v. *Millard,* 1 Johns. Ch. 409; *Croft* v. *Moore,* 9 Watts, 451; *Hines* v. *Keller,* 3 Watt & Serg. 401; *Lathrop and Dall's Appeal,* 1 Barr, 522.

If a surety in a bond to the United States pays the debt, he is entitled to the same preference over other creditors as the United States had. *United States* v. *Hunter,* 5 Mason, 62; 5 Peters, 174; *Dias* v. *Bouchard,* 3 Edwards, 485; *United States* v. *Preston et al.* 4 Wash. 446; *Enders* v. *Brum,* 4 Randolph, 438; *Grider* v. *Payne,* 9 Dana, 188; *Perkins et al.* v. *Kershaw et al.* 1 Hill Ch. 344; *Regina* v. *Salter,* 1 H. & N. 274; *Regina* v. *Robinson,* id. 275.

In Maryland and Delaware it is settled not only that a surety paying the debt has a claim to be subrogated to the right of the creditor and to all his liens and securities, but also that the payment operates in itself as an assignment in equity of the debt and of a judgment upon it, so as to authorize him to sue or issue an execution in the creditor's name for his use. *Norwood* v. *Norwood,* 2 Har. & Johns. 238; *Sotheren* v. *Reed,* 4 id. 307; *Merryman* v. *State,* 5 id. 423; *Hollingsworth* v. *Floyd,* 2 Harris & Gill, 88; *Watkins* v. *Worthington,* 2 Bland, 509; *Hardcastle* v. *Commercial Bank,* 1 Harring. 374; *Cottrel's Appeal,* 11 Harris, 294.

In further support of the right of the surety paying for his principal to be subrogated to the lien against the principal, we cite: *Lidderdale* v. *Roberson,* 2 Brock. 160; S. C. 12 Wheaton, 594; *McMahon* v. *Fawcett,* 2 Randolph, 514; *Hampton* v. *Levy,* 1 McCord's Chy. 107; *Perkins* v. *Kershaw,* 1 Hill's Chy. 344; *Railroad Co. et al.* v. *Claghorn,* 1 Spear's Eq. 547; *Land* v. *Sergeant,* 1 Edwards, 164; *Elwood* v. *Deefendorf,* 5 Bourbour, 413; *Lathrop's Appeal,* 1 Barr, 512; *Atwood* v. *Vincent,* 17 Conn. 576; *Hardcastle* v. *Commercial Bank of Delaware,* 1 Harring. 374; note, *Cino* v. *Vance,* 4 Clark, 434; *Yourk* v. *Landis,* 65 N. C. 557; *Burk et al.* v. *Chisman et al.* 1 Ala. 23; *Brown* v. *Lang,* 4 id. 50; *Commercial Bank of Lake Erie* v. *Western Reserve Bank,* 11 Ohio, 444; *Miller* v. *Woodward & Thornton, Admrs.* 8 Mo. 169; *Buthald* v. *Buthald,* 46 id. 557; *Hill* v. *Manner,* 11 Grattan, 522; *Dechard* v. *Edwards,* 2 Sneed, 93; *Dodier* v. *Lewis,* 27 Miss. 679; *Lewis* v. *Palmer,* 28 N. Y. 271; *Klop* v. *The Lebanon Bank,* 10 Wright, 88; *Constant* v. *Matteson et al.* 22 Ill. 556; *Funk* v. *McReynolds, Admr.* 33 id. 481; *Foss* v. *The City of Chicago,* 34 id. 489; *Billings* v. *Sprague,* id. 511; *Roberts* v. *Roberts,* 36 id. 339; *Phares* v. *Barbour,* 49 id. 370; *Darst* v. *Bates,* 51 id. 439; *Honore* v. *Lamar Fire Ins. Co.* id. 409, and authorities there cited; *Connell et al.* v. *McCowan et al.* 53 id. 363; *City National Bank of Ottawa* v. *Dudgeon,* 65 id. 11; *Rogers* v. *Meyers,* 68 id. 92.

Mr. ANDREW D. DUFF, and Mr. D. M. BROWNING, for the appellees:

1.   If the collector's bond creates any lien upon his real estate, as contended for in this bill, such lien being purely statutory it is purely legal, and exists by force of the law alone, and can in nowise be considered an equitable lien. It must, therefore, be enforced under the law creating it.

2.   And unless this bill shows that some special and extraordinary circumstances occurred which prevented and hindered the ordinary effect and legal execution of this lien, under the law, a court of equity will not lend its aid towards enforcing such lien.

3.   If this bond was a lien upon any of the lands of the collector, then as soon as a judgment was recovered upon it an execution should have been issued and levied upon them, and they sold in satisfaction of such judgment. *Hume et al.* v. *Gossett*, 43 Ill. 297.

In the absence of any allegation in the bill that the officer was requested to proceed, or that he refused to discharge his legal duty in this behalf, we must presume he would have done so had not these complainants prevented him by unnecessarily and voluntarily paying off the execution before he could sell said lands, and before he was in a position to demand property from them as sureties in said judgment. Subrogation will never be enforced where a party voluntarily pays. *Richmond* v. *Marston*, 15 Ind. 174; Mosier's Appeal, 6 P. F. Smith, 76; *Gadsden* v. *Brown*, 1 Spear Eq. 4; *Shinn* v. *Budd*, McCarter Ch. 234; *Sanford* v. *McClure*, 3 Paige, 122; *Wilkes* v. *Harper*, 3 Barb. Ch. 338; *Carter* v. *Black*, 4 Dev. Bat. 25; *Littleton* v. *Thompson*, 2 Beasley, 274; *Hoover* v. *Eppler*, 2 P. F. Smith, 524.

Why pay this judgment before the sheriff could sell these lands on his execution? For, until this was done he could not call upon either of these complainants for property.

The lien of a collector's bond being a naked, statutory one, and in derogation of the common law, must be construed

strictly. *Brady* v. *Anderson*, 24 Ill. 112; Potter's Dwarris on Statute, 257, 259 and 275.

The secret lien is entitled to no favor at the hands of courts. *McCoy* v. *Morrow*, 18 Ill. 523; *Rosenthal* v. *Rennick*, 44 id. 205.

The collector's bond is made, and this lien, whatever it may be, is created for the benefit of the public alone, and no private persons have any interest therein or remedies thereon. *Brown* v. *Phipps*, 6 Sm. & Marsh. 51; Cooley on Taxation, 503, note 3.

If a surety pays a debt without requiring an assignment, or doing some act at the time, showing that he did not intend to extinguish the original debt, the rights of the creditor are gone, and there are no rights as in this case to be subrogated to. Pothier on Oblig. vol. 1, p. 280; *Morse* v. *Campbell*, 36 Vt. 364; *Ætna Ins. Co.* v. *Wises*, 28 id. 95; *Bassett* v. *Lockard*, 60 Ill. 164.

Subrogation, being but the creature of equity, will never be allowed against a superior equity of a third person. *Paterson* v. *Pope*, 5 Dana, 241; *Erb's Appeal*, 2 Pen. & Watts, 296; *Huston* v. *Bank*, 25 Ala. 260; *Kyner* v. *Kyner*, 6 Watts, 221; *Bank of Pennsylvania* v. *Potius*, 10 Watts, 148; *Crump* v. *McMurty*, 8 Mo. 408; *Union Bank* v. *Edwards*, 1 Gill & Johns. 346 and 365; *Hardcastle* v. *Commercial Bank*, 1 Harrington, 374 and 378.

When both parties have an equal claim to the consideration of a chancellor, no subrogation will be allowed. *Ziegler* v. *Louk*, 3 Watts, 206; *Withers* v. *Carter*, 4 Grattan, 407; *Wallace's Estate*, 9 P. F. Smith, 401.

When the equities are equally balanced no subrogation can take place. *Miller* v. *Jacobs*, 3 Watts, 437.

The party seeking it must show a superior equity. *McGinnis' Appeal*, 4 Harris, 445; *Winebrenner's Appeal*, 6 Barr, 333.

It can not be enforced to the injury of an innocent purchaser for value without notice. *Mechanics' B. and L. Asso-*

*ciation* v. *Conover*, 1 McCarter, 219; *Rush* v. *State*, 20 Ind. 432; Douglas' Appeal, 12 Wright, 223; *Reynolds* v. *Tooker*, 18 Wend. 591; *Riley* v. *Mayer*, 2 Beasley, 351; *Williams* v. *Washington*, 1 Dev. Eq. 157; *Orvis* v. *Newell*, 17 Conn. 97; *Wise* v. *Sheppard*, 13 Ill. 41.

Mr. Justice Scott delivered the opinion of the Court:

It is set forth in this bill that Marion D. Hays was collector of taxes of Franklin county for the year 1867, and on the 5th day of December of the same year gave bond as required by statute for the faithful performance of his duties as such collector, which said bond was signed by complainants with others as sureties for such collector. The bond of the collector, so signed, was approved by the county court, was correctly copied and entered on the records of the county, and was forthwith forwarded to the Auditor of Public Accounts, with the certificate of the county clerk, under the seal of his office, showing such bond had been duly approved and recorded. It is also alleged that a large sum of money came to the hands of such collector which he failed to account for, and afterwards a judgment was rendered against the collector and his securities for the amount due the county, which judgment complainants paid and discharged.

It is further alleged, that the collector was in default in regard to taxes due the State and by him collected, in a large sum, for which the State recovered a judgment in the Supreme Court, and by supplemental bill it is shown complainants have paid and discharged the latter judgment.

It is shown, by appropriate allegations, that at the date of the bond and the time of recording the same, the collector was the owner of certain real estate described, and that he afterwards became the owner of other real estate, all of which he sold and conveyed before either judgment was recovered against him and his sureties for the respective sums due from him for taxes to the county and State. As a ground of relief it is charged that the bond of the collector, from and after the

time it was recorded, became a lien on all the real estate which he owned at the time it was approved and recorded; and that it also became a lien upon all the real estate subsequently acquired by him, and that such lien is still in force. The insolvency of the collector, and of one of his sureties, who does not join in this bill, is alleged, and the prayer of the amended bill is, that complainants be subrogated to all the rights and benefits of the lien created in favor of the State on the real estate of the collector described, by the approval and recording of his bond; and that such real estate be sold to pay complainants the amounts, with interest, which they have paid as sureties for such collector, and for general relief. A general demurrer interposed was sustained and the bill dismissed, and that decision is assigned for error.

Numerous important questions have been discussed by counsel, but we do not think all of them arise on the demurrer to the bill, and we will only remark on such as do, in our opinion, arise on the record as it comes before us.

The Revenue act of 1853, section 5, provides, " the collector's bond shall be approved by the county court, and shall be correctly copied and entered on the records of said court, and forthwith mailed to the Auditor of Public Accounts, with the certificate of the clerk, under the seal of his office, showing that said bond had been duly approved and recorded; said bond, when approved and recorded, shall be a lien against the real estate of such collector until he shall have complied with the conditions thereof." That act was in force when the collector's bond in this case was signed, approved and recorded, and it is under the section cited that complainants, by their bill, seek to have a lien declared in their favor on the lands of the collector owned by him at the time of making and recording the bond, and in like manner upon all subsequently acquired real estate, for the amounts they were compelled to pay as sureties for such collector. Since then the act of 1853 has been repealed, and section 134 of the Revenue act of 1872, giving the same lien, enacted in its stead; but as we under-

stand the repealing clause of the act of 1872, it expressly provides the repeal of such act "shall not be construed to impair any right existing."

Treating the lien created by the statute on the real estate of the collector as a "right existing," it seems clear a lien exists in favor of the State, as if the act of 1853 had not been repealed.

No construction could make the section of the statute cited plainer than it is. It makes the bond of the collector, from the time of its approval and recording, a lien on the real estate of the collector until he shall have complied with its conditions. Had the title to the property remained in the collector, there might have been no necessity for invoking the aid of a court of chancery, for it no doubt would have been the duty of the sheriff to have exhausted the property of the principal before levying upon that of the sureties; but the bill charges, and of course the demurrer admits the allegation, the collector had previously conveyed all his property, and was then insolvent. There was, therefore, no property of the collector that the sheriff could seize on the execution in his hands before proceeding against the property of his sureties. Had the State found it necessary to avail of the lien given by the statute against the property of the defaulting collector, a court of equity would be the appropriate and, indeed, the only forum where such lien could be established on the property the collector had owned, in the hands of subsequent purchasers. There being no property of the collector the title to which was in his name, the sheriff could rightfully seize the property of the sureties in satisfaction of the execution in his hands; and whether there was in fact any levy upon the property of the sureties, payment was made under coercion, and it was not in any just sense a voluntary payment on the part of complainants.

That the State would have had a lien on the real estate of the collector for the amount of his defalcation, admits of no doubt, unless that right has been lost by some act done; and

the only question in the case is, whether complainants can be subrogated to whatever rights the State may have had.   No reason is perceived why they may not be.   Having paid the sums due the county and State from their principal, it is equitable the sureties should be subrogated to all rights the State had to coerce payment from the defaulting officer.   The lien given by the statute was to secure the payment of the taxes; and if the sureties of the officer, under what is the same thing as coercion, are compelled to make up the deficit in his accounts, it seems they should have the same benefits of the statutory lien the State would have had in the premises.   It is clear the property of the collector is the primary fund out of which all defalcations in the payment of taxes are to be made up, and the very object of creating the lien was to secure the property of the collector for that purpose. No doubt the sureties take upon themselves the obligations imposed by the bond, in view of the fact the real property of the principal is secured by a lien given by a positive statute as indemnity against loss on account of the non-performance of its conditions.   Otherwise, they might not have been willing to take upon themselves such onerous obligations unless the property of the collector was held as the primary security by the lien created.   The sureties having paid the amount of taxes to the State and county for which their principal was liable on his official bond, what reason can be assigned why they may not have the benefit of the property of the collector secured by this statutory lien for their own indemnity, in like manner as the State would have been entitled to it?   It seems to us it is the exact case where the doctrine of subrogation applies, as that doctrine is defined in the books.   It is well understood law that where a mortgage is taken from the principal as further security, the property embraced in it is to be held not only for the benefit of the creditor, but for the indemnity of the surety.   It is the right of the surety, when he pays the debt of his principal, to be subrogated to whatever security the creditor had.   That principle has its appli-

cation here. The lien given by the statute is in the nature of additional security for the faithful performance of the duties of the collector, and the property secured and covered by the lien is not only for the benefit of the State, in case of defalcation on the part of the officer, but as indemnity to his sureties in case they are compelled to make up the deficiencies in the collector's accounts; and unless the doctrine of subrogation applies, the sureties, who have made good the losses sustained, can have no remedy.

In *Hunter* v. *The United States*, 5 Peters, 173, it was declared, "the same right of priority which belongs to the government attaches to the claim of an individual who, as surety, has paid money to the government."

In *The United States* v. *Hunter et al.* 5 Wash. 446, it was held, under the sixty-fifth section of the Duty act of March 2, 1799, the surety, having discharged the bond for duties to the United States, was entitled to whatever preference the law secured to the United States, to be first paid out of the estate of the principal.

In this case, complainants were judgment debtors to the people, for the use of the county and State, and having paid the debt due from their principal, on the plainest principles of natural justice, they ought to be subrogated to all the rights the State had to coerce payment from the principal out of his property.

Exactly what may be the extent of the lien given by the statute, or whether it embraces subsequently acquired real estate as well as that owned by the collector when his bond, as such, was approved and recorded, are questions we need not now discuss. They can be more readily determined when the exact facts shall be made known by the answer, and whether the property sought to be subjected to the lien of the statute was obtained by purchase for cash, or by exchange of property as is suggested was the fact.

Nothing appears on the face of the bill that indicates complainants have unreasonably delayed their application for the

aid of the court in the premises.    Whether the State or com-
plainants have been guilty of such *laches* as ought to bar
relief can be more understandingly discussed when the facts
shall be developed in the answer and by such testimony as
shall be offered.

The suggestion the fifth section of the Revenue act, that
gives the lien in such cases, contravenes public policy by cre-
ating a species of secret liens calculated to result in wrong
and injury to the citizen, finds no sanction in any fair con-
struction of the law.    The lien given is created by a public
law, and is evidenced in particular cases by the bond, which
is a matter of public record.    Any one, therefore, who is about
to purchase real estate from the collector of revenues is put
on his guard by the public records; and if he avails of the
information within his reach, he may readily protect himself
against a lien created by a public law.

The decree will be reversed and the cause remanded.

*Decree reversed.*