# JOHN J. LOCHENMEYER *et al.*

*v.*

# WILLIAM FOGARTY *et al.*

*Filed at Springfield June 11, 1884.*

1. PAYMENT—*to whom it must be made in order to operate as an extinguishment of the debt.* In order that the payment of a note shall operate as an extinguishment of the debt, it must be to a person authorized to receive it. A payment to a mere custodian, when the debtor knows the money secured by the note belongs to another, will not discharge the same, nor will the payment of the same to an attorney once having authority to receive payment, after his authority has been revoked by the death of the owner.

2. So if the maker of a note made payable to a guardian, for the benefit of his ward, which is left with an attorney by the guardian for safe keeping, after the death of the guardian pays the same to the attorney, by giving his other notes payable to the attorney, which are indorsed and sold by the latter before maturity, and afterward paid, such payment will not be treated as a discharge of the original debt, and the maker may, notwithstanding, be required to pay the same again.

3. ATTORNEY AT LAW—*collection of debts—revocation of authority by death of client.* The authority of an attorney at law to collect a note placed in his hands by a client, is revoked by the death of the latter.

4. SAME—*in what payment may be received.* In the absence of special authority, an attorney can receive payment of his client's note only in money. He can not accept other notes of the maker made payable to himself, and if he does, it will be no payment, unless ratified by the client.

5. SUBROGATION—*in favor of surety paying for his principal.* A surety, or one standing in that situation, who is compelled to pay the debt of the principal, will in equity be entitled to be subrogated to all the rights and equities of the creditor as to any fund, lien or equity which the creditor may have against any other person or property on account of the debt. The equities of the surety extend to all the rights of the creditor respecting the debt which the surety pays.

6. ADMINISTRATION OF ESTATES—*liability of executor for money reported, but never received.* A guardian sold land of his ward, and received part payment in money, and notes for the balance, secured by mortgage and personal security, all of which he left in the hands of his attorney, where they remained until after his death. The attorney, without authority, surrendered the notes to the maker, taking others payable to himself, which he sold and assigned before their maturity, appropriating the proceeds to his own use. He, as attorney for the executor of the guardian's estate, procured

the executor to report to the county court his receipt of the money and the proceeds of the notes originally taken, and after his own appointment as guardian of the same ward, filed his claim against the estate of his predecessor, and obtained judgment for the amount reported as in the hands of the executor, and thereupon receipted for the same as paid to him. The executor's final account showed such payment to the second guardian, and was approved by the court: *Held*, that the record showed no liability against the executor, and that if parol evidence was admitted to charge the estate, in opposition to what the record thus showed, by proving the executor paid nothing in fact to such second guardian, it was proper also to show by parol that the executor never received any of the money or proceeds of the notes.

APPEAL from the Appellate Court for the Third District;— heard in°that court on appeal from the Circuit Court of Logan county; the Hon. LYMAN LACEY, Judge, presiding.

This was a bill filed by William Fogarty, to compel payment by appellants, Lochenmeyer, George Stoll and John Cutlip, and Ezekiel French, executor of the estate of Jacob Hammon, deceased, of the amount that Fogarty was compelled to pay as surety upon the guardian bond of Edward Lynch, to Joseph Ream, his successor as such guardian, and also to compel French to account for money received by him, which, it was alleged, belonged to the ward.

The facts of the case, in brief, are substantially these: On April 18, 1864, Jacob Hammon was appointed guardian of Edward Applegate, who was the owner of certain lands. On February 12, 1875, under an order of the county court, Hammon, as such guardian, sold a part of the land to appellant John J. Lochenmeyer, for the sum of $2366.55, and received in cash $762.48, (the first payment,) and took two promissory notes from him, with George Stoll as surety, dated February 15, 1875, each for $749.71, payable in one and two years from the date thereof. Another part of the land was sold to John Cutlip for $152.40, of which $52.40 was paid in cash, and a note given for the balance. These notes were all payable on their face to Jacob Hammon, guardian, etc., and were secured by mortgage on the lands sold. At the sale all

the moneys paid and the notes given were placed in the hands of Edward Lynch, the attorney of the guardian. On November 30, 1875, and before the maturity of any of the notes, Hammon died, leaving them still in the hands of Lynch. On December 22 Lynch was appointed guardian of the minor, on condition that he give bond, with security, in the sum of $4000, but he did not qualify by giving bond until June 11, 1877. On December 25, 1875, Ezekiel French qualified as executor of the will of Jacob Hammon, deceased, Lynch being his legal adviser and attorney in the management of the estate, and transacted the business of the estate. On February 14, 1876, at the maturity of the Cutlip note, and the first maturing of the Lochenmeyer and Stoll notes, Cutlip went to the office of Lynch and took up the note he had given to the guardian, giving a new note in its place. On the same day Lochenmeyer and Stoll went to Lynch's office and took up the two notes executed by them to Hammon, and executed other and smaller notes, payable to Lynch, for the full amount of the two notes of $749.71, and at the same time Lochenmeyer executed a mortgage to Lynch on the premises in question, which was never recorded. These notes were transferred by Lynch before their maturity, and were afterward paid by the makers to the holders. On July 22, 1876, French, as executor, filed an inventory in the county court, showing $1432.86 on hand at the time of the decease of his testator, and the two notes of Lochenmeyer and Stoll, of $749.71 each, and the Cutlip notes; and on June 28, 1877, reported to the county court the collection of these notes. On the same day Lynch filed a claim for the amount of money in the executor's hands and the collection proceeds of the notes, amounting to $3554.66, which claim was allowed by the county court. Lynch thereupon receipted to French for $3138.14, leaving a deficiency of $416.52, which Lynch afterward collected by taking a note from the surety of Hammon. On June 11, 1877, Lynch gave bond as guardian, with one Thompson and Wil-

liam Fogarty as his sureties. On June 29, 1877, Lynch filed in the county court his report as guardian, showing that he received from French, the executor, the $3138.14, and that there was a balance due from Hammon's estate of $416.52, which report was approved by that court February 26, 1878. On April 18, 1878, Lynch filed another report, showing a balance in hand belonging to his ward, of $3644.43, which was approved on the same day, and he was ordered to pay this amount over to Ream, his successor, he having been removed for failure to give additional security on his bond. On September 24, 1877, French released the mortgage given by Lochenmeyer. Lynch failing to pay over to his successor, suit was brought on his bond for the amount thus appearing in his hands, and a judgment obtained, which Fogarty paid, and filed this bill. On the hearing the court dismissed the bill as to French, the executor of Hammon's estate, rendered a decree there was due on the note given by Cutlip to Hammon the sum of $175.80, and that there was due on the two notes given by Lochenmeyer and Stoll to Hammon, $2636.36, and that they pay those sums to the complainant, with six per cent interest, and awarded executions therefor, and further provided that if these sums were not paid within twenty days, the master should sell the mortgaged premises. Lochenmeyer and Stoll and Cutlip prayed and perfected an appeal to the Appellate Court, where the decree was affirmed, and they bring the case to this court by their further appeal, and Fogarty also appealed from the decree dismissing the bill as to French.

Mr. THOMAS F. TIPTON, for the appellants Lochenmeyer and Cutlip:

On the death of Hammon the legal title to the notes became vested in French, the executor. *Lave* v. *Thompson*, 43 N. H. 320; *Shield* v. *Helds*, 34 id. 407; *Davis* v. *Boylston*, 9 Mass. 337; *Clapp* v. *Stoughton*, 10 Pick. 463; *Bucker* v.

*Buckingham,* 18 Conn. 110; *Rooveback* v. *Lord,* 4 id. 337; *Ladd* v. *Wiggins,* 35 N. H. 421.

Lynch, being the attorney for the executor of the will of Hammon, had authority, as such, to collect the notes, and the executor afterward ratified the acts of his attorney.

Lynch, French, Ream and Fogarty are each estopped from setting up the fact, if a fact, as against appellants, that the notes were not fully paid. The judgments of the county court finding the money due on the notes to be in the hands of French, and paid over by him to Lynch, are conclusive in a collateral proceeding. *Buckmaster* v. *Carlin,* 3 Scam. 104; *Rockwell* v. *Jones,* 21 Ill. 279; *Chesnut* v. *Marsh,* 12 id. 173; *Weiner* v. *Heintz,* 17 id. 259; *Horton* v. *Critchfield,* 18 id. 133.

The court having jurisdiction to approve of the report of French as executor, and the allowance of the claim of Lynch as guardian, its judgment is conclusive in this collateral proceeding. *Young* v. *Lorain,* 11 Ill. 624; *Fitzgibbon* v. *Lake,* 29 id. 165; *Hobson* v. *Ewan,* 62 id. 146; *Stowe* v. *Kimball,* 28 id. 93; *Pensoneau* v. *Heinrich,* 54 id. 271.

Fogarty, being surety for Lynch, stands in no better position than Lynch. *Dillingham* v. *Jenkins,* 7 S. & M. 479; *McCabe.* v. *Raney,* 32 Ind. 309.

The order on Lynch to pay over this money was conclusive on him and his sureties. *Ammon* v. *People,* 11 Ill. 6.

A party for whose benefit the doctrine of subrogation is exercised, can acquire no greater rights than those for whom he is substituted. *Alliance. Co.* v. *Louisiana Ins. Co.* 8 La. 1; *Simpson* v. *Thompson,* 3 App. Cas. (Eng. L.) 279; *Huston* v. *Bank,* 25 Ala. 256; *Brown* v. *Long,* 4 id. 50; Brandt on Suretyship, sec. 276; Sheldon on Subrogation, sec. 44.

Subrogation is purely an equitable right, and ought to be denied in all cases where its exercise would produce injustice. *McGinnis' Appeal,* 4 Harr. 448; *Lloyd* v. *Galbraith,* 8 Casey, 103; *Zigler* v. *Long,* 2 Wat. 206; *Hancock* v. *Steen,* 2 Miles, 273.

Subrogation will never be allowed unless the party applying for it has greater equity than the party opposing it. *Neff* v. *Miller*, 8 Barr, 351; *Hines* v. *Heller*, 3 W. & S. 401; *In re McGill*, 6 Barr, 504; *McCormick's Admr.* v. *Irwin*, 11 Casey, 117; *Dent* v. *Wait*, 8 W. Va. 47; *Eaton* v. *Hasty*, 6 Neb. 425.

A surety will not be subrogated to the rights and liens of the creditor, so as to defeat the interest acquired and held by a third person, when that interest, though subordinate to that of the creditor, is prior in date to the undertaking of the surety. *Patterson* v. *Pope*, 5 Dana, 241; *Bank* v. *Sherley*, 12 Bush, 304.

The right of subrogation, and the equitable assignment of the claim of the creditor against the principal debtor, relate to the date of the suretyship against the principal debtor and those claiming under him. *McArthur* v. *Martin*, 23 Minn. 74.

The liability of Lynch and his sureties by his guardian's bond was not restricted to matters occurring after the execution of the bond, but he and his sureties, appellee and Thompson, became responsible to the ward, or any succeeding guardian of the ward, for all moneys, etc., that came to the hands or possession of the guardian, whether before or after the execution of the bond; and neither he nor his sureties will be permitted to show that he squandered the money before the execution of the bond. *Fogarty* v. *Ream*, 100 Ill. 366; *Roper* v. *Sangamon Lodge*, 91 id. 518; *Cowley* v. *People*, 95 id. 625; *Pinkstaff* v. *People*, 59 id. 148; *Commissioners* v. *Maryandt*, 2 Bev. 228; *Stoval* v. *Banks*, 10 Wall. 583; *United States* v. *Girault*, 11 How. 27; *Morely* v. *Town of Metamora*, 78 Ill. 394; *Ream* v. *Lynch*, 7 Bradw. 161.

A party to a judgment will not be permitted to contradict the record, nor be allowed to show that the judgment was without consideration. Bigelow on 'Estoppel, 19, 45; *Lane* v. *Bommelman*, 17 Ill. 97; *Wilson* v. *Heintz*, id. 259; *Goudy* v. *Hall*, 30 id. 116; *Elston* v. *Chicago*, 40 id. 514.

Messrs. BLINN & HOBLETT, for the appellee French:

The record shows that if French ever had any of this money, he has properly accounted for it.

Fogarty, to make out his case, is compelled to go behind the records. He has proved not only that French never paid Lynch the amount of the receipt, or any part of it, but also that French never had received this money.

There is no principle governing the law of estoppel that is more certain and well defined than that there is no estoppel if the truth appears. Bigelow on Estoppel, 293; Comyn's Digest, 2; *Sinclair* v. *Jackson*, 8 Cow. 585.

An estoppel can never be invoked by one who has procured the false recitals or the act done. *Heffner* v. *Vandolah*, 57 Ill. 520; *First Nat. Bank* v. *Ricker*, 71 id. 441; *Preston* v. *Mann*, 25 Conn. 118.

Messrs. BEACH & HODNETT, for William Fogarty:

Payment to the former guardian is no payment. *Holmes* v. *Field*, 12 Ill. 424.

A party making payment is bound to know that the person to whom he pays is authorized to receive it. *Holmes* v. *Field*, 12 Ill. 425; *People* v. *Smith*, 43 id. 220; *Triplett* v. *Scott*, 12 id. 137; *Hodson* v. *McConnell*, id. 170; *People* v. *Deams*, 92 id. 192; *Greenhood* v. *Keator*, 9 Bradw. 183; *Sanders* v. *Norton*, 4 T. B. Mon. 464; *Lewis* v. *Ingersoll*, 3 Abb. 55; 1 Keyes, (N. Y.) 347; *Day* v. *Boyd*, 6 Heisk. 458; *Watts* v. *Kinney*, 3 Leigh, (Va.) 272.

Fogarty became subrogated to the rights of Ream, as against Lochenmeyer, Stoll and Cutlip, and French and his sureties. *Fogarty* v. *Ream*, 100 Ill. 366; *Crawford* v. *Richeson*, 94 id. 165; *City of Keokuk* v. *Love*, 31 Iowa, 119; *Bunting* v. *Ricks*, 2 Dev. & Bat. Eq. 130; 32 Am. Dec. 699; *Green* v. *Crockett*, 2 Dev. & Bat. Eq. 230; *Lowe* v. *Newbold*, 4 Jones' Eq. 212.

The receipt given by Lynch to French was no payment. *Patterson* v. *Inhabitants of Freehold*, 38 N. J. L. 255; Brandt on Suretyship and Guaranty, sec. 468, page 606.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by William Fogarty, against appellants, and Ezekiel French, to require appellants to pay certain notes which were given by them, payable to Jacob Hammon, guardian of Edward Applegate, and also to compel French to account for certain moneys belonging to the ward, alleged to have been received by him as executor of the estate of Jacob Hammon, deceased. On the hearing, the court rendered a decree against appellants, as prayed for in the bill, but dismissed the bill as to French.

The facts out of which this litigation arose are substantially as follows: On the 18th day of April, 1864, Jacob Hammon was appointed guardian of Edward Applegate by the county court of Logan county. The minor owned a certain tract of land in Logan county, which the guardian sold, under a decree of court, February 15, 1875, which authorized the sale. The land brought at the sale $2414.30. A part was sold to John Cutlip for $152.40, who paid in cash $52.40, and gave his promissory note for $100, payable to Jacob Hammon, guardian, due in one year. The balance of the land was sold to John L. Lochenmeyer for $2261.90. He paid down $762.48, and gave his two promissory notes, for $749.71 each, due in one and two years, with ten per cent interest. George Stoll signed the notes as surety, and a mortgage was also given on the premises to secure the payment of the purchase money. At the sale, the money and notes passed into the hands of Edmund Lynch, who was the attorney of the guardian in obtaining a decree to sell the land. Jacob Hammon died November 30, 1875, testate, and Ezekiel French was named as executor in his will, and quali-

fied as such. On or about the 14th day of February, 1876, Cutlip called on Lynch, and satisfied the note he had given Hammon, guardian of Applegate. On the same day, Lochenmeyer and Stoll went to Lynch's office and took up the two notes of $749.71 each, and gave in their place smaller notes for the full amount of the indebtedness, all payable to the order of Lynch. These notes were indorsed and sold by Lynch before maturity, and after they became due they were all paid by the makers. On the 22d of December, 1875, an order was made in the county court of Logan county appointing Lynch guardian of Edward Applegate, upon filing bond in a certain amount, with certain persons named in the order, as sureties. No bond was, however, filed until June 11, 1877, when Lynch filed a bond, with complainant as surety, and entered upon the discharge of his duties as guardian. Under the advice of Lynch, French, as executor of the estate of Hammon, filed a report in the county court, charging himself with the entire proceeds of the sale of the minor's land. Lynch then recovered a judgment against French, executor, for the amount, receipted the judgment, and charged himself, as guardian, with the amount. No money was, however, paid over by Lynch to French, or from French to Lynch, but Lynch had squandered the money long before French qualified as executor of Hammon's estate. Subsequently, failing to give additional security on his bond, as he was ordered to do by the county court, Lynch was removed, and Joseph Ream was appointed guardian of the minor. Ream sued Lynch and Fogarty on their official bond, to recover the money Lynch had reported as coming into his hands as guardian of Applegate, and which had been squandered by Lynch, and such proceedings were had that Fogarty, the surety of Lynch, was compelled to pay Ream the money Lynch had received belonging to Applegate. Fogarty, having paid the amount, filed this bill to be subrogated to all the rights of Ream and Applegate, against appellants and French.

It is a fact concerning which there is no controversy, that Lochenmeyer took up the two notes which were given for the land secured by mortgage, and gave his own notes, signed by himself and Stoll, payable to the order of Lynch, which he subsequently paid to the persons who had purchased the notes of Lynch. But the question arises, whether this constituted a payment of the indebtedness for which notes had been given payable to Jacob Hammon, guardian of Edward Applegate. It will be remembered that these notes were lifted on February 14, 1876, and that Lynch did not become guardian of the minor until June 11, 1877. He did not at this time act, or even profess to act, in the capacity of guardian. It is apparent, from the evidence, that he had no right, title or interest whatever in the notes. He had them in his possession when Hammon died, and after his death continued to hold the notes as mere custodian. It is a plain proposition, if the notes had been paid to a person authorized to receive payment, the indebtedness would have been extinguished. It is also equally plain that payment of a note to a person who has no authority to receive the money does not extinguish the debt. Here, Hammon, the guardian, died, leaving the notes in the possession of Lynch. It nowhere appears that Hammon, while living, had authorized Lynch to collect; but if he had, that authority was revoked by his death, and Lynch could not then collect or convert the notes to his own private use. He had authority, merely, after Hammon's death, to hold the notes in his possession until some person authorized should call upon him for them. Appellants are in no position to claim that they paid the notes innocently or in good faith. They knew that the notes were given for land that belonged to the minor. They also knew that the notes were payable to the guardian, that he was dead, and that the money which the notes represented was trust funds, and knowing these facts, they had no right to take up the notes from Lynch by giving others payable to his order, nor can

they claim any rights by virtue of such a transaction. It may be a hardship that these parties are required to pay their notes a second time; but who is to blame? They knew, or by the exercise of the least precaution might have known, when they obtained the notes of Lynch, that he had no authority to surrender them; and if they saw proper to deal with him, they acted at their own peril.

But it is urged that when the notes were taken up, Lynch was attorney for French, who was executor of Hammon's estate, and as the legal title to the notes was in French, the act of Lynch was authorized. This position is not tenable. Lynch, in his evidence, does not pretend that in the surrender of the notes and mortgage he was acting as attorney of French, and French testified that he never had the notes in his possession; that he supposed Lynch held them as attorney of Hammon; that he never gave Lynch any instructions in regard to the notes. There is, therefore, no foundation in the evidence for the position. But if he had been acting as attorney of French, he could only have received payment in money. An attorney, in the absence of special authority, has no right to give up his client's notes for paper payable to himself. The law may be regarded as well settled that an attorney has no authority to receive anything but money in payment of his client's debt. 2 Parsons on Notes and Bills, 614, note c; *Nolan* v. *Jackson,* 16 Ill. 272.

If, then, the transaction between appellants and Lynch did not discharge the debt which belonged to the minor, Applegate, which we have seen it did not, it follows that Ream, who succeeded Lynch as guardian, had the right to proceed and collect of appellants the original debt. He also had the right to compel payment from Fogarty, who was surety on the bond of Lynch. Here were two remedies open to Ream. He saw proper to enforce the latter, and compelled Fogarty to pay the money due his ward, Applegate. Fogarty having paid the money, is he entitled to be subrogated to the rights

of Ream, as against appellants? The rule on this subject is well stated in *Eddy* v. *Trevor*, 6 Paige, 521, as follows: "It is an established principle of equity, that sureties, or those who stand in the situation of sureties for those who pay a debt for them, are entitled to stand in the place of the creditor, or to be subrogated to all his rights as to any fund, lien or equity which he may have against any other person or property on account of the debt." *City of Keokuk* v. *Love*, 31 Iowa, 119, is a case also in point, where it is expressly held that the equities of sureties extend to all the rights of the creditor respecting the debt which the sureties pay. In 1 Leading Cases in Equity, page 144, it is said: "Moreover, as soon as the surety has paid the debt an equity arises in his favor to have all the securities, original and collateral, which the creditor holds against the person or property of the principal debtor, transferred to him, and to avail himself of them as fully as the creditor could have done. For the purpose of obtaining indemnity from the principal, he is considered as at once subrogated to all the rights, remedies and securities of the creditor,—as substituted in the place of the creditor, and entitled to enforce all his liens, priorities and means of payment, as against the principal, and to have the benefit even of securities that were given without his knowledge." In *Hays* v. *Ward*, 4 Johns. Ch. 123, Chancellor KENT says: "This right of the surety stands not upon contract, but upon the same principle of natural justice upon which one surety is entitled to contribution from another."

But the right of a surety to be subrogated to the rights of the creditor is by no means a new doctrine in this court. Indeed, it has been often held, as in *Richeson* v. *Crawford*, 94 Ill. 165, that it is the right of the surety, when he pays the debt of his principal, to be subrogated to whatever security the creditor had. (See, also, *Rice* v. *Rice*, 108 Ill. 199.) Indeed, when *Fogarty* v. *Ream*, 100 Ill. 366, was before us at a former term, although, perhaps, the question was not directly in-

volved, yet it was passed upon, and held that Fogarty, upon payment of the liability imposed upon him by the bond he had signed as surety for Lynch, would be entitled to be subrogated to whatever rights Ream might have, as against appellants. If there is any case where a surety should be entitled to the benefit of the remedies and securities that were in the power of the creditor, this would seem to be one in which the doctrine should be strictly enforced. Lochenmeyer, Stoll and Cutlip, appellants, who had given the original notes for the lands belonging to the minor, made them payable on their face to the order of Jacob Hammon, guardian of Edward Applegate. Now, when the guardian was dead, the notes not indorsed, and no new guardian having been appointed, the exercise of the least precaution should have dictated to them that Lynch had no authority whatever to surrender to them the notes, and accept in lieu thereof new notes payable to his order.

But it is claimed by counsel for appellants, that if the doctrine of subrogation may be invoked, Fogarty could only be entitled to be subrogated to the rights of Lynch. No authority has been cited in support of this position, and we are aware of no case where such a doctrine has been announced. Ream, the guardian of Applegate, was the creditor, and when Fogarty, who was a security for the money due from Lynch to the guardian, was compelled to pay that money, he became subrogated to the rights of the creditor, Ream, and was entitled to enforce such securities as Ream held for the collection of the money, one of which was an action against appellants on the original notes, which had never been legally paid.

One other question remains to be considered, and that is, whether French, the executor of Hammon, is liable. It is not claimed that French ever received any money belonging to the minor, Applegate, but as executor of the estate of Hammon he filed an inventory, in which these notes were

scheduled as assets of the estate. Subsequently he allowed a judgment to be rendered against him in favor of Lynch, guardian, for the amount of these notes. He also filed in the county court a report, in which he charged himself with the amount of these claims as money collected, and in the same report claimed a credit for the full amount thereof paid over to Lynch, guardian, and also filed Lynch's receipt in proof of the payment. The records of the county court fail to disclose any liability resting on French, while they show he received the money. At the same time they disclose the fact that he paid it all out to a person lawfully entitled to receive the same,—so that, by the records, no case can be made against French. But it is claimed by Fogarty that he has a right to go behind the record and prove that no money was actually paid over by French to Lynch at the time the receipt was given. If this be true, and it is proper to go behind the record for that purpose, then it is proper to go behind it and prove that no money ever came into the hands of French. If it is right to set aside that portion of the county court record which shows that French paid over the money to Lynch, it is also right to set aside that part of the record which shows that he received the money. It is not French who asks to impeach the county court record, but it is Fogarty, and when he undertakes to dispute the truth of that portion of the record which defeats his right of action, the other portion is so closely connected with that portion as to render it manifestly unjust to exclude the evidence bearing upon it. But it is unnecessary to discuss the matter further. We do not think there is any liability resting on French.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

MULKEY and SCOTT, JJ., dissenting.

Mr. JUSTICE DICKEY, dissenting:

The surrender of the original notes and mortgage by Lynch, and the entry of satisfaction of the original mortgage upon the record by French, administrator, occurred February 14, 1876. At that time Lynch accepted as payment and satisfaction of the old notes and mortgage, new notes, payable on their face to himself, for the amount due on the old notes, secured by adequate personal security and by a new mortgage on the land. The notes thus paid and satisfied were, in law, the property of French, the administrator. He had the undoubted right to accept the new securities in satisfaction of the old debt, and thus charge himself with the amount due on the old securities, as assets in his hands, and had he transacted this business in person, it is obvious he could not afterwards maintain any action or suit, as such administrator, upon the original notes or mortgage. Now, when we remember that Lynch was the professional adviser and attorney of French, under whose advice and with whose professional aid his appointment as administrator had been consummated and all his subsequent administration had been conducted, and when we bear in mind that French knew that payment of some sort had been made to Lynch of a demand belonging to him, as administrator, and at once recognized the payment as though made to himself, and accordingly entered satisfaction of record of the old mortgage, I think the payment to Lynch was, in law, payment to French, and if so, as between French and the makers of the original notes and mortgage the payment should be held valid. That French regarded the payment to Lynch as payment to him, is clearly shown by the fact that after Lynch qualified as guardian, French confessed a judgment in favor of Lynch, as guardian, for the amount of that payment, as so much money received by him as administrator. Very likely, French allowed the amount of this payment to remain in the hands of Lynch, his attorney, for the reason that he expected that Lynch

would qualify as guardian, in which case he would have a right to appropriate the amount as guardian. Hence, even if Fogarty be entitled to subrogation against Lynch, French and Lochenmeyer, I think the decree ought to declare Lynch primarily liable, and French as secondarily liable, and Lochenmeyer as liable only if the amount be not paid by Lynch or French.

It, however, must be noted that Lynch, by receipting the judgment against French, and by reporting the amount in his hands, after Lynch had qualified as guardian and after Fogarty had become his surety, gives *prima facie* evidence that at that time he had not squandered or appropriated to his personal use the new notes or money received by him for them. This cast the burden upon Fogarty to show that this was not true. The mere fact that these notes were indorsed without date, (although in some cases this raises a presumption that the indorsement was at the date of the notes,) is not sufficient to repel this conclusion; and especially this presumption should not be indulged against the fact that payments on two of these notes are indorsed in Lynch's handwriting, at dates after Fogarty had signed his bond. There is no direct proof that these notes did not remain in Lynch's hands until after he qualified as guardian, and in such case they became assets in his hands, as guardian, and hence Fogarty became primarily liable for any subsequent conversion to his own use by Lynch.

Another view equally cogent, in my mind, is as follows: When Lynch accepted these notes, he, as between himself and the makers of the original notes, undertook that the money to arise from the new notes should be applied, through the proper channels, to the use of the ward, who was the equitable owner of the original demand, and as to that duty, in equity, the makers of the original notes were merely his sureties. Now, when French, who legally owned that demand, falsely confessed that the amount had been paid to

him, as administrator, he impaired the right of the makers of the original notes which they had to demand of Lynch that he should pay the amount to French. This impaired their right as sureties, and hence discharged them from liability to French, to whom, at that time, they were alone liable.

Another view still more cogent: When a man who is debtor to an estate is made administrator of such estate, and gives bond as such, it is well settled that his debt to the estate, by operation of law, becomes at once assets in his hands as administrator, for the faithful application of which his surety becomes liable on his bond, and this though the administrator be insolvent. I see no difference in principle between the case of an administrator and a guardian. When, therefore, Lynch became guardian, if he had before that appropriated to his own use the proceeds of the new notes, he was, in equity, indebted to the estate of his ward for the amount of the demand. Certainly he became so liable when he receipted the judgment he had recovered against French. This sum thus being assets in his hands as guardian, Fogarty became primary guarantor that Lynch would faithfully apply these assets, and hence he has no higher equity than the makers of these original notes.

The rule as to subrogation relates solely to the rights of the creditor against those whose obligations to pay are higher than the obligation of the surety seeking subrogation. If their obligations are equal, then the right of contribution, and not of subrogation, prevails. If the general rule, as stated, be adopted without this qualification, it would follow that had the makers of these original notes paid this demand to the present guardian,—being, in equity, mere securities for Lynch, —they might have had subrogation to collect this sum from Fogarty. Can it be possible that two parties can occupy such relation to a given demand that the one who pays *first* can compel the other to make him whole?

Of course the decree ought to be reversed for the omission to require Lynch to pay, and requiring others to pay only on his default. It is erroneous in that it charges Lochenmeyer and others, primarily, as between them and Fogarty. It is erroneous because he was fully discharged by the giving of the new notes to Lynch, which were accepted by French as payment and satisfaction. In any view which I can take of this case, I think the decree ought to be reversed.