J. L. MOORE, APPELLEE, V. MONTGOMERY POLLOCK ET AL., APPELLANTS.

FILED MARCH 17, 1897.   No. 7109.

1. **Agency: COLLECTIONS: PAYMENT.** An agent employed to make collection of commercial paper is, as the result of that relation, authorized to receive in payment thereof such coin or currency only as is by law declared to be a legal tender, or which is by common consent treated as money, and, in commercial transactions, passes as such at par.

2. ———: ———: ———. The defendant, desiring to pay and satisfy a
note and mortgage for $1,000 then about maturing, executed in
favor of a local investment company a note and mortgage for
$1,500, and received from T., the manager of said company, the
sum of $465, the latter agreeing to pay off the first mentioned
note and mortgage, then held by the plaintiff in the state of Mas-
sachusetts. He also, without the knowledge or consent of the
plaintiff, charged the local company upon its books, with the
amount of said note, to-wit, $1,035, and entered a corresponding
credit in favor of a Massachusetts corporation authorized to re-
ceive payment thereof. No money passed by the transaction,
except as above stated, and the local company subsequently passed
into the hands of a receiver, after having negotiated the $1,500
note and without having paid or accounted for the balance of the
proceeds thereof. *Held* not to sustain the plea of payment.

APPEAL from the district court of Dodge county.
Heard below before MARSHALL, J. *Affirmed.*

*Frick & Dolezal,* for appellants.

*Munger & Courtright* and *G. G. Martin, contra.*

POST, C. J.

On the 8th day of October, 1885, Montgomery Pollock
and wife borrowed the sum of $1,000 through one Ton-
cray, acting as agent for the Dakota Mortgage Loan Cor-
poration, hereafter called the "Dakota Company," and on
said day executed and delivered to Toncray their nego-
tiable note or bond in the principal sum above named,
payable to the order of said Dakota Company October 1,
1890. Accompanying said note or bond were coupons,
also executed by the Pollocks, for the semi-annual inter-
est upon the principal debt, all payable at the office of
the said corporation in Boston, Massachusetts. The Pol-
locks, in order to secure said bond and coupons, on the
day first mentioned executed in favor of the payee therein
named a mortgage upon the southeast quarter of section
10, township 17, range 9 east, in Dodge county. On the
17th day of November, 1885, the Dakota Company duly
sold and transferred said bond and coupons to Fanny C.
Palmer, who thereafter indorsed the same to Moore, the

plaintiff herein, as trustee, and who prosecutes this action for her benefit. Subsequent to the transactions above noted the Globe Investment Company succeeded to all the rights of the Dakota Company, the principal office and place of business of said corporations being the same, to-wit, Boston, Massachusetts, with a branch office at Kansas City, Missouri. Some time after the execution of the mortgage which is the subject of this controversy the Nebraska Mortgage & Investment Company, hereafter called the "Nebraska Company," was organized and succeeded to the business of Toncray, who thereafter acted as the managing officer of said company. Said last named company, as claimed by appellants, became, upon its organization, the agent of the Globe Investment Company for the purpose of making collections of principal and interest of loans negotiated by Toncray, including the loan in controversy for the Dakota Company, and also for the said Globe Investment Company. It is shown that both Toncray and the Nebraska Company made frequent collections for the Globe Investment Company, and that the accruing interest on the loan in question, as the same became due and payable, was collected by one or the other of said parties at their place of business, in Fremont, and remitted to the said Globe Investment Company at Boston, or to the latter's branch office at Kansas City. On the maturity of the principal debt, in the month of October, 1890, the Pollocks arranged to pay and discharge the same by means of a new loan, to be negotiated by Toncray. Pursuant to that arrangement, the Pollocks executed in favor of the Nebraska Company a bond and mortgage for $1,500, payable October 1, 1895, with interest from date at the rate of six per cent per annum. On the delivery of the last mentioned securities to Toncray the latter paid to the mortgagors named the sum of $465, but whether by means of his personal check or the check of the Nebraska Company does not clearly appear. He also credited the Globe Investment Company with the sum of $1,035 on the books of the Nebraska

Company, under date of October 4, 1890, and at the same time entered a corresponding charge against the last named corporation. The money was, however, never remitted by the Nebraska Company, which, subsequent to the transaction last mentioned, passed into the hands of a receiver, and is now insolvent. In the month of July, 1891, the second note and mortgage were by the Nebraska Company sold and transferred to Frances E. Walker, who is made a party to this action, and who has filed herein a cross-bill praying for a foreclosure of her said mortgage. Upon proof of facts substantially as above stated the district court for Dodge county found the issues in favor of the plaintiff, and entered a decree of foreclosure in accordance with the prayers of the petition and cross-bill, from which, so far as it relates to the plaintiff's cause of action, the Pollocks appeal.

It may, we think, be fairly assumed from the foregoing statement that the relation between the plaintiff and the Nebraska Company was that of principal and agent with respect to the interest coupons. It may also be conceded, for the purpose of the present inquiry, that said company was, when the principal debt matured, authorized to receive payment thereof in behalf of the plaintiff in the usual course of business, even in the absence of the evidence of such indebtedness; but does it follow therefrom that said company could bind the plaintiff by accepting in satisfaction of the said claim a note and mortgage payable to its own order five years thereafter, and which would require the advancement by him or his *cestui que 'trust* of fifty per cent of the face value of his security? To that question the books furnish a ready answer in the proposition that an agent employed to make collection of commercial paper is not, as the result of such relation alone, authorized to receive in payment thereof anything but money, which, however, as said in *State v. Hill*, 47 Neb., 456, includes not only legal tender coin and currency, but any other circulating medium, instruments, or tokens in general use in the commercial world as the rep-

resentative of value. A reference in this connection to a few of the many cases in point will serve to illustrate the foregoing proposition.

*Scott v. Gilkey*, 153 Ill., 168, was a case in which a bank holding notes for collection accepted therefor other notes of the maker, payable to its own order at a future date, and surrendered the first mentioned notes, marked paid. At the same time it credited the payee's account with the amount of his notes, although no money passed in the transaction. It was held not to amount to a payment and the payee was permitted to recover.

In the recent English case of *Hine v. Steamship Insurance Syndicate*, 11 The Reports [Eng.], 777, it was held that an agent authorized to demand payment on behalf of his principal can receive money only, and payment by means of a bill of exchange drawn by the agent and accepted by a debtor of the principal, payable three months after date, was held not within the authority of the former and not binding upon the principal, although said bill was immediately discounted and honored at maturity.

*Ward v. Smith*, 7 Wall. [U. S.], 447, was a case in which a bank holding for collection certain securities payable at its office accepted in satisfaction thereof depreciated bank notes, but the court, referring to the foregoing facts when relied upon as a defense to an action on such securities, said: "That the power of a collecting agent, by the general law, is limited to the receiving for the debt of his principal that which the law declares to be a legal tender, or which is by common consent considered and treated as money and passes as such at par, is established by all the authorities." (See, also, *Lochenmeyer v. Fogarty*, 112 Ill., 572; *Merchants Nat. Bank of Philadelphia v. Goodwin*, 109 Pa. St., 422; *Graydon v. Patterson*, 13 Ia., 256; *Aultman v. Lee*, 43 Ia., 404; *Scully v. Dodge*, 40 Kan., 395; *Robinson v. Anderson*, 106 Ind., 152; Mechem, Agency, sec. 375, and cases cited.)

Counsel for appellants, however, remind us of our duty

to look at the substance rather than the form of the trans-
action in order to determine whether the act of Toncray,
as manager of the Nebraska Company, was *ultra vires*, or
within the scope of the authority of such corporation as
the plaintiff's agent, and in the course of the argument
make use of this forcible illustration: "Suppose that Pol-
lock, instead of receiving from Toncray $465 only, had
received a check for the full sum of $1,500, which he im-
mediately cashed, and after handing to the latter the
amount of plaintiff's mortgage, $1,035, retained the bal-
ance of $465. No one would claim that the transaction
was not a full and complete payment. Did, then, the
fact that Mr. Pollock made a new loan, from the proceeds
of which the note in question was to be paid, under the
circumstances of the case, alter the character of the trans-
action and render it any the less a payment?" If we
accept as true the premises from which counsel argue, we
must be prepared to accept their conclusion; but the fal-
lacy of that reasoning lies in the assumption, wholly
unwarranted by the record, that there was, aside from
the $465 above mentioned, any money passed or any
credit transferred by means of the transaction involved,
either from Pollock to the Nebraska Company or from
said parties, or either of them, to the plaintiff. Toncray,
it is true, credited plaintiff's agent, the Globe Investment
Company, with the amount of Pollock's note on the books
of the company of which he was manager; but the mak-
ing of such entry was altogether gratuitous on his part,
and if within the scope of his authority as agent for that
corporation, it was certainly ineffective for the purpose
of binding the plaintiff or the beneficial owner of the note.
Mere book-keeping alone between the Globe Investment
Company and the Nebraska corporation will not change
the actual status of the parties or destroy rights which
arise out of the real facts of the transaction. Indeed, the
transaction in controversy, when tested by a final analy-
sis, proves no more than that the Nebraska Company, as
Pollock's agent, was by the latter entrusted with the sec-

end note for the purpose of negotiating the same, and with the understanding that it would from the proceeds thereof pay and discharge his prior note and mortgage. And the wrong to him of which mention is made by counsel, however much to be deplored, results from the negligence or fraud of his chosen agent, with which the plaintiff is in no sense chargeable. It follows that the decree is right and must be

AFFIRMED.