(Nos. 19375, 19376.—)

THE PEOPLE OF THE STATE OF ILLINOIS *et al.* Appellants, *vs.* THE FARMERS STATE BANK OF HOOPPOLE *et al.*— (JACOB H. BENNISON, Receiver, Appellee.)—THE PEOPLE OF THE STATE OF ILLINOIS *et al.* Appellants, *vs.* THE FARMERS STATE BANK OF ANNAWAN *et al.*—(WILLIAM W. CALHOUN, Receiver, Appellee.)

*Opinion filed June 19, 1929—Rehearing denied October 5, 1929.*

OSCAR E. CARLSTROM, Attorney General, M. L. HAY, and HENRY G. FERNCASE, for appellants.

MARTIN E. O'CONNOR, JACOB CANTLIN, and STURTZ & EWAN, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

Two bills filed in the circuit court of Henry county on July 25, 1927, presented for decision the question, Does the law of Illinois give to the State a right to priority of payment of its debt out of its debtor's property over his other creditors? The circuit court holding that it did not, sustained demurrers to the bills seeking to enforce such priority. The complainants electing to stand by their bills, they were dismissed for want of equity and they have appealed to this court, the State being interested in the cases.

The complainants in both cases were the People of the State of Illinois and Carl W. Peterson, individually and as county treasurer and *ex-officio* county collector of Henry county. The original defendants in No. 19375 were the Farmers State Bank of Hooppole and several individual defendants alleged to be interested in the subject matter, and in No. 19376 were the Farmers State Bank of Annawan and several individual defendants alleged to be interested in the subject matter. By amended and supplemental bills Jacob H. Bennison, as receiver of the Hooppole bank, was subsequently joined as defendant in No. 19375, and William W. Calhoun, as receiver of the Annawan bank, as defendant in No. 19376. Both bills were dismissed by the complainants as to all other defendants. The facts in the two cases are identical except names and amounts. They were argued together and will be disposed of in one opinion.

Carl W. Peterson was the treasurer of Henry county, and to facilitate the payment and collection of taxes, in accordance with a custom of a number of years' standing, he appointed an officer in each of the banks in the county a deputy collector and notified tax-payers that the taxes might be paid at any bank. S. M. Sommers, the president of the

Hooppole bank, was appointed a deputy collector on February 25, 1927, gave bond for the security of his principal and collected and issued official receipts for $16,314.58 of taxes, which he deposited in the Hooppole bank in a general checking account to the credit of Carl W. Peterson, county treasurer. Joseph H. Peltier, who was cashier of the Annawan bank, was appointed a deputy collector at the same time and gave bond to secure his principal. He collected and deposited in his bank $18,894.61 under the same circumstances as in the case of the Hooppole bank. On May 20, 1927, the banks were closed by the Auditor of Public Accounts. About August 17, 1927, Jacob H. Bennison was appointed by the Auditor receiver of the Hooppole bank and William W. Calhoun receiver of the Annawan bank and they came into possession of the assets of the banks. About October 24, 1927, the Auditor of Public Accounts filed bills in the circuit court praying for a dissolution of the banks, and under those bills the court appointed Bennison and Calhoun as receivers, respectively, of the Hooppole bank and the Annawan bank.

There is no constitutional or statutory provision which expressly confers on the State a right to priority in the payment of debts due to it. If there is any such right it exists as a part of the common law of England, which has been adopted by this State. There is no doubt that the common law of England recognized such right in the crown, in regard to debts of any character due it, to receive payment in preference to any creditor who had not a lien. (*Marshall* v. *New York*, 254 U. S. 380; *In re Carnegie Trust Co.* 206 N. Y. 390, 99 N. E. 1096, 46 L. R. A. (n. s.) 260; *United States Fidelity and Guaranty Co.* v. *Bramwell*, 108 Ore. 261, 217 Pac. 332, 32 A. L. R. 829.) The first session of the legislature after Illinois became a State enacted that the common law of England, and all statutes in aid of it prior to the fourth year of James the First, except three statutes not material here, which are of a

general nature and not local to that kingdom, shall be the rule of decision and be considered as of full force until repealed by legislative authority. This has continued to be the law of this State ever since, the words in the present statute, "so far as the same is applicable and of a general nature," having been added in the revision of 1845. It has not been suggested that the right in question has been repealed by legislative authority. It must therefore still be the rule of law if it is applicable. There is no case in which the general rule has been considered by this court. Its existence has been recognized in regard to the liability for a tax, which, however, is not an ordinary debt; (*Dunlap* v. *Gallatin County,* 15 Ill. 7; *Dennis* v. *Maynard,* id. 477;) and in the latter case it is said: "All the principles applicable to the prerogative right of the crown in this respect equally apply to the public dues for taxes," thus impliedly recognizing that the priority is applicable to all debts, and its applicability to the liability for taxes is an application of the general rule of the priority of the crown. Before our statute of February 4, 1819, the prerogative of the State to priority in payment of debts owing to it had been maintained upon the common law in the State of Maryland in the case of *State* v. *Rogers,* 2 Harr. & McH. 198, in 1786, in *Murray* v. *Ridley,* 3 id. 171, in 1793, and in the State of Pennsylvania in *Commonwealth* v. *Lewis,* 6 Binn. 266, in 1814. In South Carolina it had been held in 1795, in the case of *Commissioners* v. *Greenwood,* 1 S. C. Eq. 1, that the State had no prerogative to be paid out of the effects of its debtor in preference to any citizen who had a judgment, mortgage or other lien. This was not a denial of the succession of the State to the prerogative of priority, for the common law itself made the same exceptin in the case of the crown that was made in the South Carolina decision. Thus in the United States, at the time of the act of February 4, 1819, it was understood, and so expounded by the courts, that the States had succeeded

to the right of priority here contended for. We are informed of no decision to the contrary prior to that date though a contrary view has since been taken in some of the States.

In *United States Fidelity and Guaranty Co.* v. *Bramwell, supra,* the court, reviewing the authorities on this question, said: "That the several States of the Union, based solely upon their adoption of the common law and without the aid of any State statute for its support, have succeeded to the prerogative right of the British crown to priority in payment out of the assets of an insolvent debtor as against all persons not having antecedent lien, is established by the great weight of authority. Holding to this effect are the following cases:" The opinion then cites cases from Georgia, Maryland, Minnesota, Montana, New York, North Carolina, Pennsylvania, Tennessee, Virginia and West Virginia, and continues: "The only cases to which our attention has been called by counsel or that we have been able to find denying the right of the State to priority are:" Cases are cited from Mississippi, New Jersey and South Carolina and two decisions of Federal circuit courts of appeals which are not in harmony with the decision in *Marshall* v. *New York, supra.* The conclusion of the court upon the subject was: "Hence it will be seen that the courts of New Jersey, South Carolina and Mississippi are the only courts that hold that the right of the State to priority in payment, as against general creditors, does not exist in the absence of a statute conferring the right, while the courts of all the other States passing upon the question hold that the right does not depend upon statute but is based upon the common law. Therefore, in conformity to the great weight of authority and in accordance with what we deem to be the better reasoning, we hold that the State of Oregon possesses the preference right to priority in payment of debts due the State out of the assets of an insolvent debtor as against all persons not having an antecedent lien;

that this right does not rest upon statute but is based upon the common law; and that the rule of common law upon which the right depends has been adopted and is in force in this State."

The Federal government has no right to priority of payment of debts due it except such as is dependent on an act of Congress, because there is no common law of the United States in the sense of a national customary law distinct from the common law of England as adopted by the several States, each for itself, applied as its local law. *United States* v. *State Bank of North Carolina,* 6 Pet. 29; *Smith* v. *Alabama,* 124 U. S. 465.

The debts which the State is seeking to collect in these cases are not a liability for taxes but are ordinary debts for money deposited; general debts, which would participate *pro rata* with all other general creditors except for the privilege of priority of payment which the State possesses. The existence of the right at common law cannot be doubted. It was an attribute of the crown—the sovereign. It is now an attribute of the People—the sovereign. The great weight of judicial authority favors that view and we are in accord with it.

Some contention is made that the bank was not indebted to the State but its indebtedness was to the county collector. The money for which it was indebted was taxes collected, and the bank had full knowledge of the source of the money. The political subdivisions of the State, whether counties, towns or school districts, for whose use the taxes were collected, are subject to the supervision and control of the State and their property and revenue are subject to the control of the legislature. The property of such corporations is public property in the hands of State agents for certain purposes and is subject to the will of the legislature. (*People* v. *Camargo School District,* 313 Ill. 321.) When necessary to enforce payment of taxes or special assessments by judgment and order of sale, it is provided by section 191

of the Revenue act that judgment shall be in favor of the People of the State of Illinois. The bond required of the county treasurer as county collector must run to the People of the State of Illinois. It is clear enough that until distribution, at any rate, to the various municipalities and political subdivisions, money paid for taxes is the property of the State.

It is contended that equity should not assume jurisdiction, for the State has an adequate remedy at law by suit upon the bond of the collector, and the collector, who is the other complainant, has an adequate remedy at law by suit upon the bond which the deputy collector gave for the security of the collector. The remedy of the People on the collector's bond and of the collector on his deputy's bond may or may not prove adequate, but that is not a question in this case. The People have the right to recover against the banks because the banks have the People's money. They are seeking, in addition to that, a decree for priority of payment over other creditors, and this relief they can get only by bill in equity against the receiver. The People and the collector are not improperly joined as complainants. They are not adversary parties. The People may maintain the suit without the collector, but the collector is a proper party. A decree against the banks, when paid, will relieve the collector of further liability, and if the People should force payment by the collector he would be subrogated to the lien of the People on the assets of the bank. The People and the collector have the same interest and their joinder as complainants was not improper.

The decrees are reversed and the causes are remanded to the circuit court of Henry county, with directions to overrule the demurrers to the bills.

*Reversed and remanded, with directions.*