(No. 20889.— )

THE PEOPLE OF THE STATE OF ILLINOIS *et al.* Appellants,
*vs.* J. L. OHLE, Receiver, Appellee.

*Opinion filed October 23, 1931.*

LAYMAN & JOHNSON, and F. E. TROBAUGH, for appellants.

MOSES PULVERMAN, (TILMAN B. CANTRELL, of counsel,) for appellee.

Mr. JUSTICE ORR delivered the opinion of the court:

The principal issue presented by the record in this case is whether or not a county superintendent of schools is entitled to priority of payment as to State funds deposited by him in a general deposit in a State bank which has become insolvent.

On September 30, 1927, the Mercantile Bank and Trust Company of Benton, Illinois, was closed by the Auditor of Public Accounts and a receivership followed, which is still pending. At the time of its closing the bank was carrying the sum of $82,528.12 in a general deposit in the name of "Elmer B. Swofford, county superintendent." This money had been paid to Swofford, as county superintendent of schools of Franklin county, by the proper State officials out of the State school funds allotted to Franklin county. After the closing of the bank and the appointment of a receiver the county superintendent filed a common claim for the entire amount, at that time claiming the right to set off a principal debt owed by Swofford to the bank of $2149.48, and later claiming an additional set-off in favor of the Benton Community Consolidated School District No. 47 of $14,907.75, and a further set-off in favor of the Logan Community Consolidated School District No. 52 of $778.42. These three set-offs were allowed by the court and the county superintendent was given a common claim for the balance of $64,692.47, upon which some of the dividends due the county superintendent have been set aside for payment. The order of the circuit court allowing these set-offs and allowing the remainder as a common claim has not been modified, vacated or set aside and no appeal has been taken therefrom. Subsequent to this order, and at a later term of court, the county superintendent filed the pending bill in equity, asking that the balance of $64,692.47 theretofore allowed as a common claim be made a preferred claim against the assets of the bank in the hands of the receiver. This bill was later amended, and to the amended bill the receiver filed a general and special demurrer, which was sustained by the court and an order entered dismissing the amended bill for want of equity. From that order the present appeal is taken.

The principal argument of the appellants is that the fund in question was entitled to a preference because the

money deposited was known by the bank and its officers to be State school funds which had not been distributed to the various school treasurers for which they were ultimately intended. It is pointed out that the money in question had been collected by taxes from the people of the whole State and while in process of distribution to the various political subdivisions it was caught in transition in an insolvent bank. In furtherance of this argument it is averred that the county superintendent of schools was in no sense a holder or custodian of the funds deposited in his name but was acting simply as an agent or arm of the State in the distribution of these funds to the various township school treasurers. In support of this position counsel cite and rely on the decision of this court in *People* v. *Farmers State Bank,* 335 Ill. 617. That case involved a distribution of undistributed tax moneys in the hands of the county collector, and it was there held that as to such moneys the State is entitled to priority. In three later decisions, however, this court has refused to extend the above doctrine as to tax moneys or other public funds which have been distributed to the various governmental agencies of the State. The first of these later cases (*People* v. *Farmers State and Savings Bank,* 338 Ill. 134,) involved the claim of a school treasurer for priority as to township school moneys deposited by him, and in that case this court referred to the former case in the following language: "That case, [*People* v. *Farmers State Bank,* 335 Ill. 617,] under the facts stated in the opinion of the court, is authority for the proposition that money paid and collected for taxes is the property of the State until distribution thereof to the various municipalities and political subdivisions. However, we are not disposed to extend that doctrine and make it applicable to tax money or alleged public funds which have been segregated, separated or delivered to the proper representative or custodian of each and every minute political subdivision or unit of the State, county or other municipality." This

same principle was adhered to in *People* v. *Home State Bank,* 338 Ill. 179, where this court denied priority to the claim of a township supervisor as to certain road funds. This same rule was followed in *People* v. *Bank of Chebanse,* 340 Ill. 124, where the claim of a county treasurer for priority as to certain county moneys arising from the sale of road bonds and other general sources was denied. These successive and recent decisions in cases of similar character are sufficient to establish the rule limiting the preference of the State to such tax moneys as are in the hands of the county collector and undistributed. In the present case no such priority exists, because the State officials had distributed the school fund to Franklin county and they had been paid over to the county superintendent. The State had no control or supervision over this fund at the time the bank became insolvent.

The argument of appellants that the county superintendent, in making distribution of the State school fund, is the arm or agent of the State is not sustained by any statutory authority. The county superintendent is a county officer, elected and commissioned as such. (Smith's Stat. 1929, chap. 122, sec. 5.) He is not the agent of the State but is the agent of the county in distribution of the State school fund, as section 14 of chapter 122 provides: "Upon receipt of the amount due the county from the State school fund, the county superintendent shall apportion the same, together with other funds held for distribution, to the townships and parts of townships in his county * * * and shall pay the distributive share belonging to each township and fractional township to the respective township treasurer," etc. The language used in the several sections of the statute relating to the State school fund clearly shows that the money goes into the hands of the county superintendent as payment of the liquidated amount due to each county. This is shown by such language as "there shall be apportioned to each county," (par. (*e*) of sec. 234*a*,) and

"upon receipt of the amount due the county," (sec. 14,) and "the Auditor in making his warrant to any county for the amount due it." (Smith's Stat. 1929, chap. 53, sec. 45.) After such payment has been made by the State to the county the moneys paid are no longer State moneys. The county superintendent, as a county officer, becomes the holder and custodian of such moneys for the use and benefit of the several school districts in his county. The State has nothing to do with the distribution of such fund after it has reached the hands of the county superintendent. In making such distribution the county superintendent acts as disbursing officer for the county and not as an agent of the State. This court said in *People* v. *Bank of Chebanse, supra:* "It has not been held in this State, however, and cannot be, that once funds pass into the treasury of the county as county funds the State has control over such funds other than to limit the uses to which they may be put by the county. The State has no right to order them paid out. Such funds are not State funds. They belong to the county." Priority as to public moneys deposited exists only in favor of the State as an entire and indivisible sovereignty and does not extend to the various political subdivisions or agencies through which the State functions. *People* v. *Farmers State Bank, supra; People* v. *Home State Bank, supra.*

The record in this case discloses that the funds deposited by the county superintendent were in a general account, and there is nothing in the record to sustain the contention that they were on special deposit. In this situation the county superintendent stood upon the same footing as other general creditors of the bank and was entitled to no preference, the bank simply being indebted to him in his representative capacity.

The judgment of the circuit court was correct and is affirmed.

*Judgment affirmed.*