(No. 22436.—)

THE PEOPLE *ex rel.* Edward J. Barrett, Auditor of Public Accounts, *vs.* THE OREGON STATE SAVINGS BANK.— (JOHN J. FARRELL, County Collector, Appellee, *vs.* WILLIAM L. O'CONNELL, Receiver, Appellant.)

*Opinion filed October 19, 1934.*

DIXON, DEVINE, BRACKEN & DIXON, (ROBERT L. BRACKEN, and J. C. RYAN, of counsel,) for appellant.

S. DONALD CROWELL, State's Attorney, (WILLIAM J. EMERSON, of counsel,) for appellee.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

The Auditor of Public Accounts closed the Oregon State Savings Bank on January 24, 1933, and thereafter appointed William L. O'Connell receiver of the bank. Subsequently, the People of the State, on the relation of the Auditor, filed a bill of complaint in the circuit court of Ogle county charging the insolvency of the bank and praying for its dissolution and the settlement of its affairs. John J. Farrell, the treasurer and *ex-officio* collector of Ogle county, filed an intervening petition in the proceeding by which he sought to have allowed as a preferred claim, the general taxes collected, deposited in the bank and credited

to his account as county collector when the bank ceased to do business. The receiver answered the petition denying the right of the county collector to a preference over the other depositors. Harriet F. Garard, a creditor, in her own behalf and in a representative capacity, interposed objections to the allowance of a preference to the county collector. Evidence was introduced and the court, by its decree, allowed the sum to the credit of the county collector, created by the deposits indicated, as a preferred claim having priority over the claims of the bank's general creditors. From that decree, the receiver prosecutes this appeal.

The Oregon State Savings Bank was organized under the banking laws of this State and conducted a general banking business in the city of Oregon, in Ogle county, until it was closed by the Auditor of Public Accounts. On March 3, 1932, John J. Farrell, the county collector of Ogle county, presented a petition to the board of supervisors of that county requesting it to designate a bank or banks in which the moneys collected by him in the payment of taxes might be deposited. In conformity with the requirement of section 153a of the Revenue act (Laws of 1931-32, p. 87; Cahill's Stat. 1933, p. 2325; Smith's Stat. 1933, p. 2374) making it compulsory for the board to comply with such requests, it designated ten banks as such depositories. One of these depositories was the Oregon State Savings Bank, and on the day it closed its doors, Farrell, as county collector, had to his credit on the bank's books, $143,425.17, collected from the general tax levy for the year 1931. The county collector had distributed no part of this sum to the State, to any political subdivision or to any public body or corporation entitled to share in it.

A reversal of the decree is sought by the appellant, the receiver of the Oregon State Savings Bank, upon several grounds. They may be reduced, however, to the contention that the revised Banking act, and, particularly section 11 directing the payment of ratable dividends to cred-

itors of closed State banks, abrogated the common law prerogative of the State to have its claim for undistributed tax moneys preferred over the bank's general creditors.

At common law the crown of Great Britain, by virtue of a prerogative right, had priority over all subjects for the payment out of a debtor's property of all debts owing to it, whether the property was in the possession of the debtor or of a third person or *in custodia legis;* and the priority could be defeated or postponed only through the passing of the title to the property, absolutely or by way of lien, before the sovereign sought to enforce his right. (1 Coke on Littleton, 131*b*; 8 Bacon's Abridgment, 91; *Marshall* v. *New York,* 254 U. S. 380; *People* v. *Farmers State Bank,* 335 Ill. 617; *In re Carnegie Trust Co.* 206 N. Y. 390; *United States Fidelity and Guaranty Co.* v. *Bramwell,* 108 Ore. 261). This prerogative right was inherent in the crown because it was predicated upon the general principle that "where the king's right and that of a subject meet at one and the same time, the king's shall be preferred." (8 Bacon's Abridgment, 91; *Giles* v. *Grover,* 9 Bing. 128, 183; *People* v. *Waukegan State Bank,* 351 Ill. 158). Early in the history of this State, the General Assembly enacted that the common law of England, so far as it is applicable and of a general nature, and, with three exceptions not material to the present purpose, all acts of the British Parliament made in aid and to supply the defects of the common law, prior to the fourth year of James the First, and which are of a general nature and not local to that kingdom, shall be the rule of decision, and shall be considered as of full force until repealed by legislative authority (Cahill's Stat. 1933, p. 685; Smith's Stat. 1933, p. 680). Upon the adoption of the common law the sovereign's right to priority in payment became an attribute of the people of the State. (*People* v. *Farmers State Bank,* 335 Ill. 617; *In re Carnegie Trust Co.* 206 N. Y. 390). It follows that, although there is no

constitutional or statutory provision on the subject, the State enjoys a right to priority in payment of its claims for undistributed tax moneys on deposit in insolvent State banks over creditors who do not have an antecedent lien against the assets of the bank. (*People* v. *Bank of Rushville,* 355 Ill. 336; *People* v. *West Englewood Bank,* 353 id. 451; *People* v. *Waukegan State Bank,* 351 id. 548; *People* v. *Marion Trust and Savings Bank,* 347 id. 445; *People* v. *Bank of Chebanse,* 340 id. 124; *People* v. *Farmers State Bank,* 335 id. 617). The preference is not limited to that portion of the moneys deposited by the county collector which was derived from the levy of taxes for State purposes solely. Until distribution to the various subdivisions and other tax-levying public bodies, the claim is the property of the State and, consequently, the right of priority in payment attaches to the whole of the undistributed fund standing to the credit of the county collector on the books of the bank. (*People* v. *Marion Trust and Savings Bank, supra; People* v. *Bank of Chebanse, supra*). Nor is the right of preference impaired by the appointment of a receiver. *People* v. *West Englewood Bank, supra; People* v. *Waukegan State Bank, supra; People* v. *Marion Trust and Savings Bank, supra.*

To sustain his contention that the common law prerogative of the State has been abrogated by the act entitled "An act to revise the laws with relation to banks and banking," approved June 23, 1919, adopted at an election held November 2, 1920, (Cahill's Stat. 1933, p. 156; Smith's Stat. 1933, p. 195), the appellant invokes the familiar principle of statutory construction that the revision of a subject by a later statute evinces a legislative intention to substitute its provisions for the earlier law upon the same subject. (*People* v. *Gould,* 345 Ill. 288; *Chicago Motor Coach Co.* v. *City of Chicago,* 337 id. 200; *Village of Atwood* v. *Cincinnati, Indianapolis and Western Railroad Co.* 316 id. 425; *Hoyne* v. *Danisch,* 264 id. 467; *People* v. *Free-*

*man,* 242 id. 152; *State Board of Health* v. *Ross,* 191 id. 87; *People* v. *Town of Thornton,* 186 id. 162). The Banking act is a revision of the law relating to banks and banking and is a re-statement of the law on that subject. (*People* v. *Gould,* 345 Ill. 288). Although the act prescribes the procedure for the settlement of the affairs of an insolvent State bank, it contains neither an affirmative provision relating to preferences in the payment of claims nor any provision expressly repealing or waiving the common law prerogative of the State. It is well established that the rights of the sovereign are never impaired by a general legislative enactment unless such an intent is expressly declared in the statute. (*Guarantee Title and Trust Co.* v. *Title Guaranty and Surety Co.* 224 U. S. 152; *United States* v. *Herron,* 20 Wall. 251; *Dollar Savings Bank* v. *United States,* 19 id. 227; *United States* v. *Knight,* 14 Pet. 301; *People* v. *West Englewood Bank,* 353 Ill. 451; *People* v. *Waukegan State Bank,* 351 id. 548; *United States Fidelity and Guaranty Co.* v. *Bramwell,* 108 Ore. 261; *Ætna Accident and Liability Co.* v. *Miller,* 54 Mont. 377). The priority claimed in the case at bar is founded upon motives of public policy to secure an adequate revenue to sustain the public burdens and to discharge the public debts. (*United States* v. *State Bank of North Carolina,* 6 Pet. 29; *People* v. *West Englewood Bank,* 353 Ill. 451; *People* v. *Marion Trust and Savings Bank,* 347 id. 445). This preference or priority is for the benefit of the public; and in the absence of a statutory provision clearly manifesting a legislative intent to abdicate this sovereign prerogative, the duty devolves upon the courts to preserve rather than to destroy it. *People* v. *Marion Trust and Savings Bank, supra; United States Fidelity and Guaranty Co.* v. *Bramwell,* 108 Ore. 261.

The appellant further argues that there is an irreconcilable repugnancy between the common law prerogative and the provision of section 11 of the Banking act which

directs the payment of ratable dividends to creditors; that under the National Banking act no preference in payment may be asserted except for the single purpose specifically provided by the act, and that, by reason of the omission of a specific provision in the Banking act of this State reserving the sovereign's common law right to priority in payment, that right necessarily has been relinquished. The pertinent paragraph of section 11 of the Banking act, approved June 23, 1919, (Cahill's Stat. 1933, p. 161; Smith's Stat. 1933, p. 201) declares that from time to time the Auditor of Public Accounts shall make a ratable dividend of the moneys collected by the receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and that, as the proceeds of the assets of the bank are collected, he shall make further dividends on all claims previously proved or adjudicated. The corresponding section of the National Banking act (United States Code Annotated, title 12, Banks and Banking, sec. 194) makes similar provision for the payment of a ratable dividend by the comptroller of the currency "after full provision has first been made for refunding to the United States any deficiency in redeeming the notes of such association." A comparison of the foregoing provisions discloses that while the Banking act of this State is silent upon the subject of preferences, the National Banking act expressly provides for one preference only, namely, to the Federal government for advances made to redeem the insolvent bank's circulating notes. The United States is entitled to no other preference over general creditors in the distribution of the assets of closed national banks. (*Cook County Nat. Bank* v. *United States,* 107 U. S. 445). A claim of the United States to priority in payment over other creditors must find its foundation in the provisions of an act of the Congress, because there is no common law of the United States, in the sense of a national customary law, distinct from the common law of England as adopted

by the several States, and subject to such alterations as may be provided by their own statutes. (*Smith* v. *Alabama*, 124 U. S. 465; *Wheaton* v. *Peters*, 8 Pet. 591; *People* v. *Farmers State Bank*, 335 Ill. 617). The Supreme Court of the United States, nevertheless, has sustained the right of a State to exercise its prerogative derived solely from the common law adopted by the State. (*Marshall* v. *New York*, 254 U. S. 380). In that case, the court observed: "This priority arose and exists independently of any statute. The legislature has never, in terms, limited its scope; and the courts have rejected as unsound every contention made that some statute before them for construction had, by implication, effected a repeal or abridgment of the priority."

Finally, the appellant argues that section 153*a* of the Revenue act, approved and in force February 10, 1932, (Laws of 1931-32, p. 87) is indicative of the legislature's knowledge that the sovereign's common law right of priority in payment was non-existent in this State and that it had been repealed by the Banking act. The section invoked provides that in each county having a population of less than 150,000, it shall be the duty of the county board, when requested by the county collector, "to designate a bank or banks or other depository in which funds and moneys received by him in the collection of taxes may be deposited," and that the county collector shall be discharged from responsibility for all funds of the character defined which he deposits in a bank so designated to the extent of seventy-five per cent of its capital and surplus. To this section was appended the recital that, because of numerous bank failures, county collectors were experiencing serious difficulty in obtaining sureties upon their official bonds; that this difficulty should be removed to the extent reasonably possible before the collection of taxes in 1932; that, for these reasons, an emergency existed and that the act should take effect upon its passage and ap-

proval. To establish the inference drawn by the appellant from the enactment of section 153a, he asserts that, by its terms moneys received in the collection of taxes may be deposited in national as well as State banks; that the State may neither create nor enforce priority in the payment of its claims for undistributed taxes against the assets of insolvent national banks; that it cannot be presumed the legislature would discriminate in favor of national banks by authorizing deposits of the State's money in them without the common law right of priority in payment in case of their insolvency, and that, as the result, section 153a is a recognition of the repeal or abrogation by the Banking act of the preference asserted in the case at bar. A statute itself affords the best means of its exposition, and if the legislative intent can be ascertained from its provisions, that intent will prevail without resorting to other aids for its construction. (2 Lewis' Sutherland on Stat. Const. (2d ed.) secs. 348, 366). Section 153a was not passed as an amendment to the Banking act but as an addition to the Revenue act. The provision appended to the section discloses the purpose of its enactment. The section manifests no legislative intent, either directly or in conjunction with the Banking act, so far as insolvent State banks are concerned, to deprive the State of its common law right to priority in payment. Without an express provision to that end, a sovereign right is neither abrogated nor even impaired. The wisdom or policy of section 153a is a legislative and not a judicial question; and the validity of that section is not presented for consideration for it is assumed by the appellant.

The decree of the circuit court is affirmed.

*Decree affirmed.*