(No. 23308.—

The People *ex rel.* Edward J. Barrett, Auditor of Public Accounts, *vs.* The Peoples Savings Bank and Trust Company.—(The People *ex rel.* Otto Kerner, Attorney General, Appellant, *vs.* William L. O'Connell, Receiver, Appellee.)

*Opinion filed December 19, 1935—Rehearing denied Feb. 7, 1936.*

OTTO KERNER, Attorney General, and CONNELLY, WALKER, SEARLE & HUBBARD, (WILLIAM M. WALKER, and FRANKLIN P. SEARLE, of counsel,) for appellant.

S. R. KENWORTHY, and SINNETT & BRITTON, for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the court:

On January 16, 1933, the Auditor of Public Accounts closed the Peoples Savings Bank and Trust Company of Moline, hereinafter called the Peoples Bank. He appointed William L. O'Connell receiver. The People, on the relation of the Auditor of Public Accounts, filed a bill of complaint in the circuit court of Rock Island county praying the aid of the court in the liquidation of the affairs of the bank. The People, on the relation of the Attorney General, appellant herein, filed an intervening petition on behalf of the East Moline State Hospital, seeking a preferred claim for $16,364.66 which had been deposited in the bank in the name of the East Moline State Hospital by its managing officer. Appellant's amended intervening petition set forth that when the Peoples Bank closed there was $16,364.66 on deposit in the name of East Moline State Hospital. There was a checking account of $771.05 and a savings account of $15,593.61. Sixty dollars of the deposit had been advanced to the managing officer by the Department of Public Welfare to pay the wages of hospital employees, $75 was so advanced for contingent expenses, $3740.49 was profits since July 1, 1931, from the commissary operated for the benefit of the patients, and $7168.65 was the hospital amusement fund. It was derived from the profits of the commissary which had been earned before July 1, 1931, and from unexpended sums which had been deposited with the managing officer for the special use and comfort of patients but which had not been claimed by them or their

representatives within the legal period after their death or discharge from the institution, and $5320.52 was moneys deposited, under the statute hereinafter referred to in this opinion, with the managing officer by relatives, conservators and friends of patients who were still in the hospital. No part of the deposit had been paid after the closing of the bank. Its claim for preference by virtue of the sovereignty of the State of Illinois was denied by the receiver. Upon hearing of the amended intervening petition and the receiver's motion to dismiss, the chancellor allowed a preferred claim for the two sums of $60 and $75 but denied a preference as to the other items. The intervening petitioner elected to stand by its amended petition and the chancellor dismissed it, except as to the items of $60 and $75. This is an appeal from that order.

It is contended that the errors assigned by appellant are not sufficient to raise the questions which have been argued by its counsel. At the conclusion of its statement of the case appellant says: "The circuit court of Rock Island county erred in dismissing the amended intervening petition of the People and erred in its failure to grant priority to said deposits standing in the name of the East Moline State Hospital in the Peoples Savings Bank and Trust Company of Moline, Illinois." This is a sufficient statement of the points relied upon for reversal of the decree. The only question before the chancellor was whether the averments of the petition, if true, would entitle appellant to a preferred claim. Appellee is likewise in error in asserting that the case was decided on its merits by stipulation of counsel. We are unable to find any such stipulation, and the motion to dismiss the petition was allowed, except as to the $60 and $75 items. No point is here made as to these two items.

Appellant contends that the court erred in holding that the facts stated in the petition did not entitle it to a preference for the whole amount. The balance of the account,

amounting to $16,229.66, for the purposes of this decision must be considered as two funds. The $3740.49 of profits which had accrued since July 1, 1931, from the commissary, and $7168.65 in the amusement fund, which included profits from the commissary before July 1, 1931, and unexpended and unclaimed sums which had been deposited for the special use and comfort of particular patients who had died or been discharged, make up one fund. The other fund is the $5320.52, which was moneys deposited by relatives, friends and conservators for the special comfort of patients who were in the hospital when the bank closed. Section 25 of "An act to revise the laws relating to charities," approved June 11, 1912, in force July 1, 1912, (Laws of 1911-12, p. 66; 23 S. H. A. 25; Ill. State Bar Stat. 1935, chap. 23, par. 25;) and sections 1 and 2 of "An act in relation to the disposal of certain funds and property paid to, or received by, the officials of the State institutions under the direction and supervision of the Department of Public Welfare," approved June 10, 1929, in force July 1, 1929, (Laws of 1929, p. 199; 23 S. H. A. 34a, 34b; Ill. State Bar Stat. 1935, chap. 24a, pars. 55-(3) and 55-(4);) make provision for the disposition of the profits of inmates' commissaries which are received by officers of the several State institutions under the Department of Public Welfare. These sections also dispose of the unexpended and unclaimed funds which have been left in the hands of the managing officers for the special use of patients who have died or have been discharged. The money from both sources is to be spent under the direction of the Department of Public Welfare for the special comfort, pleasure and amusement of the patients, inmates and members of the particular institution where the money is received. Subsection (f) of section 4 (par. 5) of the Charities act authorizes the managing officer of a State institution to receive funds for the special care and comfort of individual patients. The item of $5320.52 is made up of such money.

The sole question is whether the funds deposited by the East Moline State Hospital belong to the State and as such are the subject matter of a preferred claim by reason of the State's sovereignty. The deposits of the State in a bank in receivership are entitled to priority over other unsecured creditors. This right of the State was a part of the common law, which has been adopted in Illinois. It is founded on the inherent right of the sovereign to have its revenue protected for the general public good. It is the duty of the courts to preserve rather than to defeat this preference right of the State. (*People* v. *Farmers State Bank,* 335 Ill. 617; *People* v. *Marion Trust and Savings Bank,* 347 id. 445; *People* v. *West Englewood Bank,* 353 id. 451; *People* v. *Oregon Savings Bank,* 357 id. 545.) Where the right of preference exists as for undistributed tax money it extends to the entire fund and for all debts due the State even though part of the fund will be distributed to subordinate taxing districts. (*People* v. *Farmers State Bank,* 335 Ill. 617; *People* v. *Bank of Chebanse,* 340 id. 124; *People* v. *West Englewood Bank,* 353 id. 451.) The right exists only in behalf of the State for the reason that sovereignty, which resides only in the State, is entire and indivisible. On this principle, counties, towns and school districts do not have the right of preference over other creditors. *People* v. *Waukegan State Bank,* 351 Ill. 158; *People* v. *Ohle,* 345 id. 405; *People* v. *Home State Bank,* 338 id. 179.

It is contended by appellee that the State's right of preference does not extend to the moneys which have come into the hands of the managing officer of the hospital as profit from the operation of the commissary or as unexpended or unclaimed funds left in his hands for deceased or discharged patients. He contends that the providing of special entertainment for inmates of the hospital is not a governmental function, and the use of these funds for that purpose is therefore not a governmental object. Further,

he contends that these are not State funds because the legislature did not appropriate them to the hospital, but rather that the legislature has shown an intention to disregard and abandon the funds by permitting them to remain in the hands of the managing officers of State institutions, subject only to a right of inspection in the Department of Public Welfare. He also contends that because part of the funds was acquired by the State in a proprietary capacity as owner of a commissary it would not be entitled to a preferred claim. It must be borne in mind that the Department of Public Welfare, as an administrative department of the State, has full charge of the East Moline State Hospital as one of the charitable institutions of the State. The functions of the hospital are State-wide and affect the entire public, whereas the various subdivisions of the State government, such as counties, towns, cities and school districts, serve local areas and needs.

While we have not passed upon the exact question presented, our attention has been called to two decisions from other jurisdictions which are in point. In *University of Tennessee* v. *Peoples Bank*, 157 Tenn. 87, 6 S. W. (2d) 328, it was held that the State of Tennessee in maintaining a university is engaged in a governmental function, so that funds deposited by the university corporation in a bank which later became insolvent could be recovered by the university under the doctrine of the State's right of preference, although they included registration fees and room rent paid by students. In answer to the contention that the university could not assert the right of preference the court said: "The holding of *United States Fidelity and Guaranty Co.* v. *Rainey, supra,* [120 Tenn. 357, 113 S. W. 397,] that the preference or priority arising from sovereignty, cannot be asserted by a county or municipal government, has no application here. The holding seems to be founded upon the idea that the preference is an incident of sovereignty which cannot be split up or divided among

the several subordinate governmental agencies of a State. The University of Tennessee was not created for the benefit of a particular section of the State, and the property intrusted to it by the State is devoted to the use of the entire public, in the performance by the State of a governmental function. We are of the opinion that the State, and the public represented by it, must be considered as the owner of property held by the university, and that the sovereign character of the State's ownership is not changed by the creation of the corporation as a convenient means through which the State exercises the strictly governmental function of educating the youth among its citizens." In the case of *In re Blalock,* 31 Fed. (2d) 328, it was held that the State highway department could invoke the common law right of the State of Georgia to priority.

We cannot agree with appellee that the providing of special entertainment to the inmates of hospitals is not a governmental function. The preference applies to all debts due the State, and so there is no merit to the contention that the preference applies only to moneys appropriated by the legislature. It is clearly within the power of the legislature to provide that all special entertainment shall be paid out of an amusement fund raised by various means at the hospital where it is to be spent and to relieve the public burden to that extent. Clearly the legislature did not, as asserted by appellee, abandon this fund to the whim of the managing officer, for the statute provides that the fund shall be spent only under the supervision of the Department of Public Welfare. The fact that the funds were acquired in part by the operation of a commissary (a proprietary function) does not militate against the right of preference. The operation of the commissary was but incidental to the governmental function of maintaining a hospital for the insane.

In *People* v. *West Englewood Bank,* 353 Ill. 451, 459, it was contended that the State was indulging in a pri-

vate enterprise by loaning its funds at interest and that the State should not be entitled to priority. In overruling that contention we said: "Where interest has been paid upon deposits of public funds, either prior to or since the enactment of the County Treasurer act, its collection is considered but an incident to the safe keeping and protection of the funds themselves. The primary purpose of such deposits is to safeguard the money. The interest obtained is an incidental result. The State does not become a money lender by such transaction." Appellee contends that the $5320.52 in the account belonged to the persons who had placed it in the hands of the managing officer for the special benefit of patients who were still at the hospital when the bank closed and that this amount was not money of the State. There are three sufficient answers to this argument. This money was deposited under the terms of the statute above referred to. Secondly, the right of preference extends to the entire fund, by analogy to the case of undistributed taxes. (*People* v. *Farmers State Bank,* 335 Ill. 617; *People* v. *Bank of Chebanse,* 340 id. 124.) The bank's debt was due to the State, and it matters not that the State was acting as trustee for particular inmates of the hospital. But a further and more conclusive answer is, that even though the money was deposited with the managing officer for the benefit of patients, under the facts alleged it was money of the State. In *Bramwell* v. *United States Fidelity and Guaranty Co.* 269 U. S. 483, 70 L. ed. 368, it was held that a deposit in a bank of Indian moneys, individual and tribal, by the superintendent of an Indian reservation, is entitled to priority over general deposits in the bank, because the debt of the bank was to the United States, within the meaning of the Federal statute providing that, in cases of insolvency, debts due the United States shall be first satisfied. Appellee seeks to distinguish this case on the ground that there is no common law governing the priority of the United States and that the matter is statutory. This, in

our judgment, is no distinction. The fact that an act of Congress was required to give the United States a preference has ·nothing to do with the question of who is a debtor of the United States.

It follows from what we have said that the decree of the circuit court is erroneous. It is therefore reversed and the cause is remanded to that court, with directions to overrule appellee's motion to dismiss and for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

Mr. JUSTICE SHAW, dissenting.