People of the State of Illinois ex rel. Oscar Nelson, Complainants, v. Chicago Lawn State Bank, Defendant. George S. Van Schaick, Appellant, v. Charles H. Albers, Appellee.

Gen. No. 40,908.

Opinion filed June 24, 1940.

BARNES & MURPHY and GLENN, REAL & BROWNING, all of Chicago, for appellant; RAYMOND G. REAL, of counsel.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, of Chicago, for appellee.

Mr. Justice Matchett delivered the opinion of the court.

## I.

On June 9, 1931, the Chicago Lawn State Bank suspended business and its books and assets were turned over to the auditor of public accounts. The auditor appointed a receiver and the appointment was later approved by the court. Joseph B. McDonough, the county treasurer of Cook county, had on deposit with the bank when it closed $100,000, which had been placed with it under a written agreement that the deposit would draw interest at the rate of 2½ per cent. This deposit was secured by a bond of the Constitution Indemnity Company of Philadelphia, executed January 9, 1931. When the bank failed, McDonough demanded payment from the surety company and October 29, 1931, the surety company paid the amount of the deposit with interest, a total of $101,240. October 31, 1931, the surety company filed its petition to be subrogated to the right of the State of Illinois to have the amount which it had paid under its bond allowed as a claim entitled to preference over all other general and preferred creditors. The receiver answered denying petitioner's right to subrogation or preference. The cause was referred to a master who reported recommending allowance as a general claim but disallowance as a preferred claim. The chancellor overruled exceptions and on May 31, 1939, entered a decree as recommended. Van Schaick, superintendent of insurance, who through consolidations and insolvency proceedings has succeeded to the rights of the surety company, appeals.

## II.

The subrogation of a surety to the rights of a party whose obligation the surety has been required to pay is an elementary rule of equity law. The right of the sovereign to have a debt due to the sovereign from an

insolvent paid in full and in preference to general creditors has been recognized by the courts of England and of Illinois. In this and other States it has been held that this right exists even in the absence of any statute declaring the right. *People v. Farmers State Bank,* 335 Ill. 617; *People v. Bank of Chebanse,* 340 Ill. 124; *People v. West Englewood T. & S. Bank,* 353 Ill. 451; *Marshall v. New York,* 254 U. S. 380, 65 L. Ed. 315; *People v. Marion Trust & Savings Bank,* 347 Ill. 445; *American Legion Post No. 279 v. Barrett,* 371 Ill. 78. These cases also hold that the right exists notwithstanding a statute similar to those which in some other States has been held to indicate a legislative intention to the contrary, of which *In re South Philadelphia State Bank's Insolvency,* 295 Pa. 433, 145 Atl. 520, and *United States Fidelity & Guaranty Co. v. McFerson,* 78 Colo. 338, 241 Pac. 728, are illustrative.

## III.

The courts of Illinois have not expressly held that the prerogative right of the State passes by subrogation to a surety company upon its complying with its voluntary contract to guarantee the payment of moneys due from an insolvent institution. The right of such surety company to be subrogated to the right based on the sovereign prerogative is denied by the respondent. There is conflicting dicta on the question without direct decision. *In re Nelson v. Colegrove & Co. State Bank,* 268 Ill. App. 56, and the same case in 354 Ill. 408 at p. 415, where the Supreme Court remarked in substance that the plaintiff in error had failed ''to show how this attribute of sovereignty can be acquired by an individual . . . .'' On the other hand, in *People v. Farmers State Bank,* 335 Ill. 617, a statement in the opinion indicates that a public official might be subrogated to this prerogative. Petitioner cites *Lochenmeyer v. Fogarty,* 112 Ill. 572, where, however, the question was not involved. Also, *Richeson v. Crawford,* 94 Ill.

165; *Whitbeck v. Estate of Ramsey,* 74 Ill. App. 524, with *Hunter v. United States,* 5 Pet. 173 (8 L. Ed. 86) in which the right of a surety to subrogation is considered with reference to the provisions of particular statutes. Such a distinction was said not to be important under the facts in *People ex rel. Barrett v. Peoples Savings Bank & Trust Co.,* 362 Ill. 395, and the validity of such distinction has been denied in a majority of the States. *United States Fidelity & Guaranty Co. v. Borough Bank,* 146 N. Y. Supp. 870; *Maryland Casualty Co. v. McConnell,* 148 Tenn. 656, 257 S. W. 410; *State ex rel. Rankin v. Banking Corporation,* 77 Mont. 134, 251 Pac. 151; and *American Surety Co. v. Pearson,* 146 Minn. 342, 178 N. W. 817.

The doctrine of subrogation is an equitable doctrine and when enforced by court of equity it would seem it should be applied according to equitable principles. The reason for the rule giving the State a prerogative right in such a case is stated to be the necessity that the State may enjoy sufficient revenue. It would seem upon principle that when a surety complying with its contract has performed its obligation and paid the debt, the reason for the rule would cease. In these days the undertaking of a surety is usually made for a consideration. It is difficult to see the equity or justice of giving such a surety who has merely complied with the terms of a contract voluntarily undertaken by it for profit, a right of subrogation to be paid in full to the exclusion of other creditors and depositors. We are much impressed by the reasoning in *In re South Philadelphia State Bank's Insolvency,* 295 Pa. 433, 145 Atl. 520.

## IV.

The county treasurer statute (Ill. Rev. Stat. 1939, ch. 36, § 5 of the act, § 21 of the statute, p. 1024 [Jones Ill. Stats. Ann. 35.23]) provides for a classification of the funds in the hands of the county treasurer in a manner which would earmark the money in his posses-

sion. Section 6 of the act (§ 22 of the statute) makes it the duty of the county treasurer to deposit these funds as classified in separate accounts. The county treasurer did not comply with this statute. In *People v. Dime Savings Bank*, 350 Ill. 503, the Supreme Court held that the responsibility of keeping accounts so as to distinguish between taxes collected and money in the custody of the county derived from other sources was on the county treasurer. Respondent points out that there is no proof that the Chicago Lawn State Bank knew of the methods used by the county treasurer in bookkeeping. It further points out that the bond executed by the bank and signed by the surety described the moneys to be loaned as ''county moneys of the County of Cook,'' and that the moneys to be loaned were many times described in this agreement by substantially similar phrases. Section 1 of the act (§ 17 of the statute, p. 1023) declares that ''the term 'county moneys' shall include all moneys to whomsoever belonging received by or in the possession or control of the incumbent of the office of County Treasurer, when acting as such or in any other official capacity incident to his incumbency of the office of County Treasurer.'' This language would be broad enough to include undistributed tax moneys, and petitioner contends that it must be supposed that the terms used in the bond and contract were used in this sense. Respondent contends this construction is untenable for the reason that the definition is applicable only to the writing of which it is a part, unless there is a clear intention to incorporate it in a definition as used in another writing, which is not the case here.

Respondent goes on to argue that as the county treasurer made a deposit of what was ostensibly Cook county funds, he and his subrogee (the bond company) are now estopped to maintain that the deposit was not Cook county funds as distinguished from funds in which the State had an interest. There might be some merit to

this contention by a receiver representing the rights of other claimants if it is held, as a matter of law, the petitioner cannot be subrogated to the prerogative right of the State. However, assuming as a matter of law, petitioner may be so subrogated and substituted, it seems (standing in the shoes of the State) estoppel could not be urged as a defense against petitioner. *Seeger v. Mueller,* 133 Ill. 86; *Catlett v. People ex rel. State's Attorney,* 151 Ill. 16; *People v. Gary,* 196 Ill. 310, 328; *People v. Bradford,* 372 Ill. 63.

## V.

However, the master and the trial court put their decision on a ground sustained, we think, by the record, namely, that the petitioner failed to prove the fund deposited in the Chicago Lawn Bank by McDonough, the treasurer of Cook county, was a deposit of funds belonging to the sovereign State. Illinois cases hold the right of the state to preference is limited to moneys undistributed to the various taxing bodies. When distribution is made the right to exclusive preference is lost. *People v. Bank of Chebanse,* 340 Ill. 124; *People v. Home State Bank of Grant Park,* 338 Ill. 179; *People v. Dime Savings Bank,* 350 Ill. 503.

The deposit of the county treasurer in the Chicago Lawn State Bank was made on January 15, 1931, by his check on an active account in his name in the National Bank of the Republic. The total account on which the check was drawn was $5,056,472.69. The county treasurer at that time also carried a time deposit account in the same bank amounting to $15,000,000. This account was opened December 29, 1930, and was closed on February 2, 1931. The books of the county treasurer indicate that the total amount of cash on hand to the credit of the county treasurer on the day the check was drawn on the National Bank of the Republic for deposit amounted to $22,332,865.31. In another deposit and in

petty cash the treasurer had on hand the further sum (as the books indicated) of $2,276,392.62.

Cases already cited and the cases of *People v. Wauke-gan State Bank,* 351 Ill. 158, and *People ex rel. Nelson v. Wiersema State Bank,* 361 Ill. 75, we think fairly established the proposition that the burden was upon the petitioner to prove in the first instance the facts necessary to establish its claim to exclusive priority. It was therefore necessary for petitioner to show that the money deposited with the Chicago Lawn Bank on January 15, 1931, was undistributed tax moneys belonging to the State. It appears from the proofs that on the date the deposit was made, the county treasurer held the following items properly regarded as such tax moneys: General 1928 Taxes, $6,427,171.93; Delinquent 1927 General Taxes & Prior, $2,733,382.40; Delinquent 1928 General Taxes & Prior, $129,896.15; Redemptions 1927 General Tax & Prior, $120,784.37; Country Special Assessment Tax, $807,599.98; City Special Assessment Tax, $1,451,665.11; Forfeiture Special Assessment Tax, $119,227.19; Delinquent City Special Assessment Tax, $1,732.31; Delinquent Country Special Assessment Tax, $157.55, a total of $11,791,616.99. The respondent admits that on January 15, 1931, all these items in possession of the county treasurer, amounting to $11,791,-616.99, were undistributed tax moneys. The evidence also tends to show that the balance of the $22,332,865.21 on hand January 15, 1931, consisted of two groups of accounts. The first of these included Inheritance Tax Deposits, $3,505,787.87; of which $2,485,921.01 was afterwards turned over to the State; Personal Property Tax Deposits, $1,025,559.10, and Appeal Tax Deposits, $546,041.47, a total of $5,077,388.44. The petitioner claims (the receiver denies) that this first group of accounts should be regarded as State money. The second group (as shown by petitioner's Exhibit 24) consisted of these items: Condemnation Tax Deposits, $81,376.04; Torrens' Law Indemnity Fund, $19,679.94;

Series "Z" Bond Fund, $2,888,465; County Collector's Contingent Fund, $240,890.87; General Forfeiture Deposit, $96,716.36; Suspense Account, $294,267.50; Motor Fuel Tax, $871,555.05; Condemnation Deposit, $764,-827.80; Miscellaneous Fund, $206,081.32, a total of $5,463,859.88. It is not contended these items were in any sense moneys due to the State.

Petitioner argues upon a theory which we shall later consider, that when the loan to the Chicago Lawn State Bank was made there were no funds in the hands of the county treasurer except undistributed tax moneys; that other funds had all been checked out for other purposes and dissipated. Therefore, it is said, all the money on hand January 15, 1931, was undistributed State money. For the present (disregarding this theory) we find no proof in the record as to what percentage of the $15,000,000 time deposit was undistributed tax moneys, nor what, if any, percentage of the $5,056,472.69 account from which the Chicago Lawn Bank deposit was withdrawn was such, nor what, if any, part of the $2,276,392.62 held elsewhere by the county treasurer was such undistributed tax moneys, and petitioner's claim fails for want of proof as the master and the chancellor found.

## VI.

Petitioner, however, argues on respondent's own theory that each account of the county treasurer had a percentage of undistributed taxes equal to the ratio of the total undistributed tax moneys to the total cash wherever held. Respondent admits that of the $22,332,-865.31 on hand January 15, 1931, the items above enumerated amounting to $11,791,616.99 were undistributed tax moneys. The petitioner argues under the facts as above stated he is at the least entitled to a preference and priority of his claim in proportion which the undistributed moneys belonging to the State bears to the whole amount of the credits of the county treasurer on

the day the loan was made. This proposition on petitioner's theory is about 76 per cent and on respondent's theory something more than 50 per cent. To this point petitioner cites *People v. Marion Trust & Savings Bank,* 347 Ill. 445; *People v. Dime Savings Bank,* 350 Ill. 503; *People v. Bank of Chebanse,* 340 Ill. 124.

These cases are all distinguishable in that there was in each of them specific proof of the amount and character of each of the items. There is no such proof here. There is a clear distinction between a mingled account into which items specifically proved as to character and amount have been deposited and a mingled account from which general withdrawals have been made, as was the case here. There is no presumption and there was no proof that withdrawals were made in any given proportion. Petitioner cites *Boaz v. Ferrell* (Tex. Civ. App.), 152 S. W. 200, and *Commissioners v. Springfield,* 36 Ohio St. 643, cases where a public official having mingled trust funds of various kinds embezzled a part of them, and the court held that the parties in interest should share the losses proportionately. These cases are not applicable to the situation disclosed by this record. There is no contention here that there was any embezzlement by the county treasurer.

## VIII.

The petitioner finally contends that as a matter of fact all the moneys on hand to the credit of the county treasurer on January 15, 1931, were undistributed tax moneys belonging to the State. In support of this theory there was offered in evidence Exhibit 25, a consolidated account showing the cash balance in the office of the county treasurer on May 1, 1930, and receipts and disbursements from that date until January 15, 1931, when the deposit was made by the county treasurer to the Chicago Lawn State Bank. In support of this exhibit, A. J. Nickerson, who for about three years was a clerk in the bookkeeping department of the county treas-

urer's office, testified he had prepared it from the general cash book covering cash receipts and disbursements. The argument is made (based on this exhibit) that as a matter of fact all funds other than undistributed tax moneys belonging to the State had been drawn out and dissipated at the time the loan was made, leaving only undistributed tax funds in the possession of the county treasurer. This conclusion is urged although contradicted by evidence originally given for petitioner by auditor Kelly of the county treasurer's office and other witnesses who testified in support of petitioner's Exhibit 24. It would be a tedious task to discuss Exhibit 25 in all its phases and in relation to other exhibits in the case. Acceptance of the inferences drawn by petitioner would require us to assume the county treasurer made improper and dishonest expenditures from escrow moneys deposited with him as well as from other Cook county funds. There is no such proof. Respondent does not question the accuracy of the particular items shown by Exhibit 25 but denies the inferences drawn therefrom. Exhibit 24 (also introduced by petitioner) showed the moneys on hand January 15, 1931, and it was verified by the testimony of the auditor and other witnesses for petitioner as stated.

The petitioner says (and it seems to be agreed) that the apparent conflict between the two statements arises from the fact that Exhibit 25 reflects entries made in the cash book, while Exhibit 24 is based on a compilation made also reflecting entries from the ledger and the journal of the county treasurer. Petitioner says these are mere book entries and not proper evidence. These entries show the transfer of $16,062,150.41 to various Cook county accounts, being the approximate share of Cook county in the general taxes of 1928. The petitioner argues (and this is the gist of his argument as we understand it) that the "mere transfer by journal entry" would not constitute a distribution of funds,

and cites *People v. Dime Savings Bank*, 350 Ill. 503. That case does not bear out this contention. The court there said in substance under the circumstances there appearing certain mere entries on the county collector's book were not enough to constitute a distribution which involved delivery to the persons entitled. The opinion cites with approval *People v. Bank of Chebanse*, 340 Ill. 124 to the effect that when funds pass into the hands of the county treasurer as "county funds" the treasurer is not entitled to a preference (p. 516). Here the journal entries show the allocation of proper amounts to various accounts and show the expenditure of funds thus allocated. The county treasurer of Cook county was the custodian of these funds. It would have been a useless gesture to require the county collector in order to make a distribution to himself as county treasurer to deliver funds in specie or checks to himself for the sums due these various accounts. We cannot assume that there were dishonest expenditures of these funds by the county treasurer, and there is no proof thereof. We cannot ignore the testimony of the auditor and petitioner's witnesses who testified to the account as to funds actually on hand when the deposit in the Chicago Lawn State Bank was made. There is no evidence in the record showing that during the period from May 1, 1930 to January 15, 1931, there was any overdraft on any escrow money or "Cook County funds." Substantially all the receipts deposited in these accounts were in cash. Upon the whole evidence, assuming the law of subrogation to be as petitioner contends, we agree with the master and the court that the intervening petitioner failed to establish a right to subrogation to the prerogative of the State as to preference in payment, and that petitioner's claim was properly allowed as a general claim. The decree will be affirmed.

*Decree affirmed.*

O'CONNOR, P. J., concurs.

(See next page.)

MR. JUSTICE MCSURELY, specially concurring:

I concur in what is said in the opinion and the result but I go further and say that in my opinion the right to priority is not transferred to an individual with the right to subrogation. Priority is the exclusive right of the sovereign State, for the reason that the affairs of government must be continued. This reason does not exist in the case of an individual. *In re South Philadelphia State Bank's Insolvency*, 295 Pa. 433.