(No. 3363—

MARJORIE WHEELER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 8, 1942.*

*Rehearing denied November 10, 1942.*

SEARS, O'BRIEN & STREIT (BARNABAS F. SEARS AND RALPH C. PUTNAM, JR. of Counsel), for claimant.

GEORGE F. BARRETT, Attorney General; ROBERT V. OSTROM, Assistant Attorney General, for respondent.

ECKERT, J.

This action is brought under Section 3 of the Workmen's Occupational Diseases Act (Illinois Revised Statutes, 1941, Chapter 48, Section 172.3) by Marjorie Wheeler, an employee of the respondent, for damages sustained as a result of contracting tuberculosis while working as an attendant at the Elgin State Hospital, Elgin, Illinois. Claimant is a single woman, twenty-seven years of age, and was first employed by the respondent on April 18, 1934. Prior to that time she had lived at home on a farm, was a strong and healthy young woman, and had had no serious illness of any kind.

During the first nineteen months of her employment, claimant worked at Burr Cottage, the women's infirmary, in which there were confined fifty to seventy-five tuberculosis patients. The majority of these were constantly confined to their beds. Although the tubercular ward was a large room, the windows could be opened only three or four inches from the bottom and top because of the danger of patients escaping, and there was no other means of ventilation. Claimant bathed and fed these women, gave them medications, made their beds, and took their temperatures. Being insane, they were uncooperative and not mentally able to control their coughing and expectoration. Frequently they would hemorrhage on the beds and floors, and even on the nurses. The air was foul. Claimant wore the usual uniform of an attendant, but was not provided with a special gown nor with a mask or any kind of covering for the mouth and nose. She conscientiously followed the only precautionary instruction given her, not to remain with the patients any longer than

necessary, and on her own initiative frequently washed her hands. She worked eight hours a day, six days a week, but for long periods, because of lack of attendants, worked a seven-day week with no time off.

From Burr Cottage, claimant was transferred to General Relief, which consisted of working in women's wards and cottages throughout the institution while steady employees were off duty. During that period, nearly a year, she occasionally worked at Burr Cottage. She was then assigned to the General Hospital, caring for sick employees, surgical patients, patients needing special care and treatment, and patients being observed and examined for tuberculosis. Two of these latter patients were nurses who had worked with claimant while she was in Burr Cottage and had contracted tuberculosis. Here, too, she frequently worked more than forty-eight hours per week. On October 1, 1937, she was transferred to the Receiving Ward in the Diagnostic Building where she remained until October 19th.

While claimant was working at the General Hospital, she began feeling tired and experienced shortness of breath. Although prior to that time she had been an active swimmer, tennis player, and dancer, she was unable to continue these activities, and spent her free time sleeping. She gradually lost weight. In April, 1937, because of this condition, she had an x-ray picture taken of her lungs, but it was negative. Her fatigue increased, and in September, 1937, she expectorated blood and began to cough. On October 16th or 17th, a second x-ray was taken which was positive for tuberculosis. She was then placed in the General Hospital where she remained until November 10th when she was removed to the Kane County Springbrook Sanitarium. All necessary hospital, medical, and nursing services were furnished by the respondent while claimant was in the General Hospital.

At the Springbrook Sanitarium, where claimant remained until August 1, 1938, she received pneumo-thorax treatments for tuberculosis. Board, room, and medical services were furnished without charge by Kane County, excepting certain special medications for which claimant paid $45.00. After August 1st, she was examined and x-rayed every three months until she returned to work at the Elgin State Hospital on March 1, 1939. She is now fully recovered and working continuously. She can take only limited physical

exercise, however, and if she swims, or dances, or climbs stairs, she becomes very short of breath. She is troubled somewhat with pleurisy, and still consults her physician for check-ups and x-rays every six months.

Dr. Kenneth G. Bulley, superintendent and medical director of Springbrook Sanitarium, a specialist in diseases of the chest, including tuberculosis, and consultant at the Elgin State Hospital, testified on behalf of the claimant. He stated that at the time she was employed at Burr Cottage, it was used for the isolation of tuberculosis patients; that conditions there "so far as infection is concerned with tuberculosis, are such that there is a much vaster likelihood of infection being incurred in the wards of these tuberculosis patients than almost any other place"; that the likelihood of a breakdown of an individual in the environment of Burr Cottage as it then existed, and the probabilities of infection were greater by 30 to 100 times than the risk of a breakdown or infection under ordinary working conditions throughout the State at large; that the conditions of ventilation present in Burr Cottage were a definite contributing factor. He also testified that the attendants at Burr Cottage were not supplied with masks although it was then customary in the care of tuberculosis patients to supply nurses with such protection.

Dr. Bulley testified that, in all probability, claimant's disease was contracted as the result of her taking care of tuberculosis patients at the Elgin State Hospital; that the risk of infection reached its peak in an institution where there is insanity among tuberculosis patients. In his opinion, claimant received a massive and heavy infection of bacilli while working in wards with tubercular patients, and in due course of time, possibly aggravated by subsequent reinfection from other cases, the disease followed its natural tendency to progress to a clinically visible and evident form of active disease. The fact that the x-ray taken in April, 1937, showed no tuberculosis did not mean that the infection had not then occurred, because even after infection occurs there may be a period of two months before any visible lung findings can be determined on the x-ray.

Dr. Bulley stated that it is necessary for claimant to take every precaution to prevent a recurrence of the disease; that there may be a relapse during succeeding years after an arrested infection such as hers. He was unable to

state with reasonable medical certainty what her future condition would be, but thought the likelihood was that she would remain well if she took care of herself. He stated, however, her chances of breakdown with active tuberculosis are several times greater than those of the general public, because of her previous infection.

Claimant contends that the State of Illinois may properly be made respondent, in the Court of Claims, in an action for damages for injury to health, resulting from a disease contracted by a state employee in the course of his employment, and proximately caused by the State's negligence, under the terms and provisions of the Workmen's Occupational Diseases Act. The State never having elected to pay compensation pursuant to Section 4 of the Act, claimant bases her claim upon Section 3, which gives an employee a right of action for damages against an employer who has not elected to provide and pay compensation, and which provides in part as follows:

Where an employee in this State sustains injury to health or death by reason of a disease contracted or sustained in the course of the employment and proximately caused by the negligence of the employer, unless such employer shall have elected to provide and pay compensation as provided in Section 4 of this Act, a right of action shall accrue to the employee whose health has been so injured for any damages sustained thereby; . . . *provided* that violation by any employer of any effective rule or rules made by the Industrial Commission pursuant to the Health and Safety Act enacted by the Fifty-ninth General Assembly at the third special session, or violation by the employer of any statute of this State, intended for the protection of the health of employees, shall be and constitute negligence of the employer within the meaning of this section; . . .

Section 5 of the Act construes the term "employer" to include the State, and the term "employee" to include "every person in the service of the State, . . . under appointment or contract of hire, express or implied, oral or written. . . ." The State of Illinois is thus expressly included as employer, and persons employed by it, as employees, for the purposes of the Act, including the provisions of Section 3.

The State being within the terms of the Act, it is contended that this court has jurisdiction of claims made by State employees and arising under this negligence section. There are two jurisdictional provisions in the Act. Section 15 provides that the Industrial Commission shall have jurisdiction "over the operation and administration of the compensation provisions of this Act." Causes of action arising

under Section 3 are left to courts of general jurisdiction, being rights of action for damages and not compensation. Section 18 provides that all questions arising under the Act, if not settled by an agreement between the parties, shall, "except as otherwise provided," be determined by the Industrial Commission. It may be contended that by this provision, jurisdiction of claims against the State under the Workmen's Occupational Diseases Act is in the Industrial Commission. If such contention were correct, the decisions of the Commission against the State, unlike all other decisions of the Commission would be unenforcable, and Sections 19(f) and 19(g) of the Act, providing for writs of certiorari from the decision of the arbitrator or the Industrial Commission, would be unconstitutional where the State is respondent (Article 4, Section 26, Constitution of 1870). Nothing in the Act indicates the Legislature intended it to be constitutional in one instance and unconstitutional in another; or intended the Industrial Commission to act in a merely advisory capacity; or intended to include the State within its provisions, yet leave claimants without a forum in which to present their claims. It appears rather that the Legislature intended Section 18 of the Workmen's Occupational Diseases Act to be restricted to questions of compensation and to be inapplicable to claims arising under Section 3. By Section 15 of the Act, it is "otherwise provided" that the jurisdiction of the Industrial Commission does not include causes of action arising under Section 3.

There is no specific provision, however, in the Workmen's Occupational Diseases Act giving this court jurisdiction, but it is contended that such jurisdiction is had under Section 6, Sub-section 4, of the Court of Claims Act, (Illinois Revised Statutes, 1941, Chapter 37, Section 432), which provides that this court shall have power:

To hear and determine all claims and demands, legal and equitable, liquidated and unliquidated, ex contractu and ex delicto, which the State as a sovereign commonwealth, should, in equity and good conscience, discharge and pay.

Standing alone, this section is insufficient to sustain the contention, (*Crabtree* vs. *State*, 7 C. C. R. 207); but considered in relation to the provisions of the Workmen's Occupational Diseases Act the contention is correct. Section 5 of the latter act includes the State and its employees; Section 3 provides a cause of action for which a claimant would be

entitled to redress against the State were it suable in courts of general jurisdiction; the Court of Claims Act provides for the hearing and determination of that cause of action. This court, therefore, has jurisdiction to hear and determine claims against the State of Illinois arising under Section 3 of the Workmen's Occupational Diseases Act.

The court having jurisdiction, the question then arises whether claimant is entitled to an award. Respondent contends that there is no liability for an occupational disease at common law; that the only guide in this case as to what shall constitute negligence is provided by Section 3 of the Workmen's Occupational Diseases Act; and that claimant has failed to show respondent guilty of such statutory negligence. Section 3 of the Act provides that violation by an employer of any statute of this State, intended for the protection of the health of employees, shall constitute negligence of the employer within the meaning of that section. It is apparent from the record that claimant was frequently required to work more than 48 hours per week. This was a violation of "An Act Concerning the Hours of Employment of Females in Certain Occupations," (Illinois Revised Statutes, 1941, Chapter 48, Section 5), which provides:

No female shall be employed . . . in any public or private institution or offices thereof, incorporated or unincorporated in this State, more than eight hours during any one day or more than forty-eight hours in any one week . . .

The violation of this statute by the respondent is clearly a violation of a statute intended for the protection of the health of employees, and constitutes negligence under Section 3 of the Workmen's Occupational Diseases Act. (*Grutzius* vs. *Armour & Co.*, 312 Ill. App. 366.)

It is contended, however, that the statute is not applicable here because general legislative enactments do not apply to the State, its properties or activities unless such an intent is clearly expressed; that the rights of a sovereign are never impaired by a general legislative enactment unless such an intent is expressly declared. (*People* vs. *Oregon Savings Bank*, 357 Ill. 545.) There it was contended that the Illinois Banking Act of 1919, being a revision of the law relating to banks and banking and a restatement of the law on that subject, and evincing a legislative intent to substitute its provisions for an earlier law on the same subject, showed also a legislative intent to waive the common law prerogative of

the State to priority in the payment of its claims, in that the Act failed to provide affirmatively for such preference. The court held, however, no such legislative intent appeared in the Act and that in the absence of a statutory provision clearly manifesting such an intent, the sovereign prerogative must be upheld. Here, however, by Section 5 of the Workmen's Occupational Diseases Act, the Legislature has expressly included the State as an employer; by Section 3 it has expressly provided for a cause of action for an injury occasioned by negligence of such an employer; and by the same section it has expressly provided that violation by such an employer of any statute of this State intended for the protection of the health of employees shall constitute negligence. The Workmen's Occupational Diseases Act contains the express legislative intent lacking in the Oregon Savings Bank case. That the statutes of this State, to which reference is made in Section 3 of the Workmen's Occupational Diseases Act, may be general legislative enactments not otherwise applicable, is immaterial because of the express legislative intent shown by the Workmen's Occupational Diseases Act.

Tuberculosis being the disease which caused the injury to claimant in this case, consideration must be given to the effect, if any, of Section 6 of the Act. That section provides in part as follows:

In this Act the term "occupational disease" means a disease arising out of and in the course of the employment. Ordinary diseases of life to which the general public is exposed outside of employment shall not be compensable, except where the said diseases follow as an incident of an occupational disease as defined in this Section . . .

Tuberculosis is a disease referred to in this section as one of the ordinary diseases of life, and therefore not compensable except as an incident of an occupational disease. (*Stewart Warner Corporation* vs. *Industrial Commission*, 376 Ill. 141; *Visoni* vs. *Industrial Commission*, 379 Ill. 608.) Neither of these cases, however, arose under Section 3 of the Act. Both were compensation cases in which the employer had made his election to pay compensation rather than to respond in damages under the provisions of Section 3. The question involved was one of compensation, and not recovery of damages.

Section 3 of the Act refers only to a disease contracted or sustained in the course of the employment; it makes no reference to an "occupational disease," or to a disease "aris-

ing out of" the employment. Section 6, on the other hand, defines an "occupational disease," and refers to a disease "arising out of" the employment, one which does not come from a hazard to which workmen would have been equally exposed outside of the employment. It clearly provides that ordinary diseases of life shall not be *compensable,* but it does not provide, even by implication, that no recovery may·be had for injuries to health caused by ordinary diseases of life under the provisions of Section 3. The meaning of the term "compensable" in Section 6 is clear.

Throughout the Act, the Legislature has distinguished between causes of action under Section 3, and claims for compensation after an election by the employer under Section 4. Different remedies are provided, and recovery under Section 3 is not limited to specific amounts, except that damages in case of death shall not exceed $10,000.00, whereas claims for compensation are limited to the amounts provided in Sections 7 and 8. Actions arising under Section 3 of the Act must be commenced within 3 years after the last day of the last exposure, and in case of death, within one year after the death and within 5 years after the last day of the last exposure; proceedings for compensation under Section 24 can be maintained only if claim for compensation has been made within 6 months after the occurrence of the disablement, and recovery can be had only if application for compensation is filed within one year after the date of the disablement, or within one year after the date of the last payment of compensation. Various other sections of the Act consistently distinguished between claims for compensation and actions for damages under Section 3. All the provisions of the Workmen's Occupational Diseases Act should be construed as a whole and read together to determine the legislative intent. (*People* vs. *Ryan,* 371 Ill. 597.) Section 6, and the Stewart-Warner and Visoni cases construing that Section, are not applicable to causes of action arising under Section 3 of the Act.

The claimant here has met all of the requirements of that Section and the record amply sustains the allegations of her complaint. She seeks damages in the total sum of $5,000.00. She was confined to her bed for a period of approximately nine months. She had previously earned $63.00 per month and maintenance of the value of $30.00 per month. For a period of 7 months after her discharge from the sanitarium

she was unable to work and spent $30.00 per month for her own support. Her future health is uncertain, and her present physical condition is not that of a normal young woman of the same age. She will always be confronted with the danger that her tuberculosis, now arrested in its development, may be reactivated. The court is of the opinion that claimant is entitled to damages under Section 3 of the Workmen's Occupational Diseases Act in the amount of $1,500.00. An award is therefore entered accordingly.